**James E. MAYS, Plaintiff,**

v.

**UNION CAMP CORPORATION and International Paper Company, Defendants.**

**No. CIV. A. 99–A–1282–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Sept. 28, 2000.

Richard Meelheim, Birmingham, AL, for plaintiff.

Thomas R. Brise, Jacksonville, FL, for defendant.

### *MEMORANDUM OPINION AND ORDER*

ALBRITTON, Chief Judge.

## I. *INTRODUCTION*

This case is before the court on a Motion for Summary Judgment filed by the Defendant, International Paper Company ("IP") on July 21, 2000.[1]

The Plaintiff, James E. Mays ("Mays"), filed his Complaint in this case on October 28, 1999. In the Complaint, Mays does not set out separate counts, but instead discusses alleged violations of federal civil rights statutes under the heading "Statement of Claims." Apparently, Mays

---

1. According to the submissions before the court, Union Camp entered into a merger agreement with International Paper Company and the name of the merged company is International Paper Company. Because they are now one company, unless otherwise specified, the court will refer to the merged company as IP.

brings several claims for failure to promote.

For the reasons to be discussed, the Motion for Summary Judgment is due to be GRANTED in part and DENIED in part.

## II. SUMMARY JUDGMENT STANDARD

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

## III. FACTS

The submissions of the parties establish the following facts, construed in a light most favorable to the non-movant:

Mays is an African–American male who has worked for IP at the Prattville, Alabama paper mill since 1979. Since January 1996, Mays has been a Top Mechanic.

At IP, when a supervisor is going to be away from his job, another employee is "set up" temporarily as the supervisor. This is a temporary promotion to the supervisor position. Mays states that he was recommended for, and was told that he would be set up as, a supervisor in March of 1998. Mays was then told that he would not be set up as a supervisor because IP was going to implement a new training program, and Mays had to go through the training program in order to be set up because he had no previous set up experience. Lonnie Ross, a white employee, was given the March 1998 set up supervisor promotion. It is apparently uncontested that no supervisor training program has been implemented at IP.

Subsequent to the denial of the set up position to Mays in March of 1998, white employees were promoted to temporary supervisor positions who did not receive any supervisor training and who had not had previous set up experience. Mays specifically contends that he was more qualified for two of these promotions, one in July of 1998 and one in February 1999.

Mays also provides evidence that two white employees were given set up promotions for which he contends he was more qualified because those white employees had performance problems.

Although IP concedes that Mays is minimally qualified for many set up supervisor positions, Mays has never been promoted to a set up position. Other African Americans employed with IP have received set up promotions.

## IV. *DISCUSSION*

A plaintiff may establish a claim for violation of Title VII and 42 U.S.C. § 1981 by use of either direct or circumstantial evidence of discriminatory intent. Where, as here, the plaintiff seeks to prove intentional discrimination on the basis of race by using circumstantial evidence of intent, the court applies the framework first set out by the United States Supreme Court in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under this framework, the plaintiff must establish a prima facie case of discrimination. *Id.* at 802, 93 S.Ct. 1817. After the plaintiff has established a prima facie case of discrimination, the burden of production is placed upon the employer to articulate a legitimate nondiscriminatory reason for its employment action. *Texas Dept. of Community Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). The plaintiff may seek to demonstrate that the proffered reason was not the true reason for the employment decision "either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Burdine,* 450 U.S. at 256, 101 S.Ct. 1089; *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir. 1997). A plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated. *Reeves v. Sanderson Plumb-*

*ing Products, Inc.,* —— U.S. ——, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

IP has moved for summary judgment stating that Mays has challenged a denial of three temporary promotions: one as a set up supervisor for the pulp and paper process control crew in March of 1998, one as a set up supervisor for the chemical steam and power process control crew in July of 1998, and one as a set up planner in February of 1999. Mays has also identified additional promotions which were given to white employees whom he says were less qualified than he. The court will address all of the promotions which have been identified by the parties.

Before the court examines the specific failure to promote claims brought by Mays in this case, the court first addresses a generally applicable ground for summary judgment advanced by IP. IP contends that Mays cannot establish a prima facie case of failure to promote as to any of his claims because he cannot show that any white person who received a promotion had qualifications lesser than or equal to Mays.

Although IP cites this court to cases for the proposition that a plaintiff must prove relative qualifications as a part of a prima facie case of failure to promote, that is not the holding of the Eleventh Circuit in *Walker v. Mortham,* 158 F.3d 1177 (11th Cir.1998), *cert. denied,* —— U.S. ——, 120 S.Ct. 39, 145 L.Ed.2d 36 (1999). In *Walker,* the court explained that "relative qualifications are placed in the second stage of the *McDonnell Douglas* framework, not the prima facie stage." *Id.* at 1190. The Eleventh Circuit panel traced the chronological development of the prima facie case requirements and determined that the earliest panel decision on this issue did not require relative qualifications. *Id.* at 1188. Finding this earliest decision to be binding, the court held that a plaintiff does not have to prove relative qualifications as a part of the prima facie case. *Id.* at 1193; *see also Underwood v. Northport Health Services, Inc.,* 57

F.Supp.2d 1289 (M.D.Ala.1999)(Thompson, Judge)(noting that *Walker* rejected the formulation of the prima-facie case that included relative qualifications at the prima facie case stage).

All of the district court cases cited by IP as requiring relative qualifications as a part of the prima facie case pre-date the *Walker* decision. The court is aware, and IP has pointed out, that there are recent Eleventh Circuit panel decisions which recite the standard relied on by IP. *See e.g., Alexander v. Fulton County, Ga.,* 207 F.3d 1303 (11th Cir.2000); *Lee v. GTE Florida, Inc.,* 226 F.3d 1249, 2000 U.S.App. LEXIS 23190 (11th Cir.2000). Those cases, however, merely recite the prima facie case elements. They do not hold that the prima facie case elements include relative qualifications, and they do not address, much less question, the *Walker* holding on relative qualifications. *See Alexander,* 207 F.3d at 1339; *Lee,* 226 F.3d at ——, 2000 U.S.App. LEXIS at *7. Additionally, they rely on precedent determined in *Walker* not to be binding precedent on the question of the prima facie case elements. *See Alexander,* 207 F.3d at 1339 (citing *Taylor v. Runyon,* 175 F.3d 861, 866 (11th Cir. 1999) which relies on *Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988)); *Lee,* 226 F.3d at ——, 2000 U.S.App. LEXIS at *7 (same). In addition to the fact that the *Walker* case specifically held, relying on the earliest panel opinion on the question as binding precedent, that relative qualifications are not to be applied at the prima facie case stage, the holding is consistent with the principle that the prima facie case elements are not to be rigid. *See Mitchell v. Worldwide Underwriters Ins. Co.,* 967 F.2d 565, 567 (11th Cir.1992) ("[T]he prima facie criteria of the *McDonnell Douglas* test are not intended to be rigidly required. . . ."). Consequently, the court follows the holding of *Walker* and will not require Mays to demonstrate that he was as or more qualified than the persons who were promoted in order to establish a prima facie case. As IP points out, the evidence and argument as to relative qualifications are still relevant within the context of IP's articulated non-discriminatory reasons. *See Walker,* 158 F.3d at 1190.

The prima facie case elements for failure to promote are that the plaintiff must show (i) that he belongs to a racial minority; (ii) that he applied and was qualified for a job for which the employer was seeking applicants; (iii) that, despite his qualifications, he was rejected; and (iv) that, after his rejection, the employer continued to seek applicants or filled the position with a person outside of the plaintiff's protected group. *Id.* at 1186.

IP's challenge to Mays' prima facie case as to the March 1998 set up supervisor position is limited to IP's argument that the person who was ultimately set up had greater qualifications. Since relative qualifications are not relevant at the prima facie case stage, however, and since this is IP's only challenge to the prima facie case, the court concludes that IP has failed to show that Mays cannot establish a prima facie case of failure to promote as to the March 1998 supervisor position.

IP's challenge to the prima facie case of discrimination as to the July 1998 set up position is that Mays was not minimally qualified, and that the person who was set up had greater qualifications. Of course, relative qualifications cannot establish that Mays does not have a prima facie case. IP has, however, also stated in its brief that Mays was not even minimally qualified.

The court has reviewed the evidence which IP has cited in support of its challenge to the prima facie case based on this set up promotion. In his affidavit, Keith Golson ("Golson"), the Assistant Maintenance Superintendent at the mill, compared the qualifications of Mays and the person who was ultimately set up for the position and states, "I determined that Smith was more qualified for the temporary promotion than Mays." Golson Affidavit. The evidence cited by IP does not, therefore, establish that Mays was not minimally qualified, but only speaks to relative qualifications. Accordingly, the court

concludes that IP has failed to show that Mays cannot establish a prima facie case as to this claim.

As to the February 1999 set up planner position, IP argues only that the person who received the set up promotion was far more qualified than Mays. As stated above, such a contention does not establish that Mays was not qualified. Accordingly, IP's argument is unavailing.

█ In addition to these claims identified by IP, Mays has stated in his response brief that there were temporary maintenance supervisory positions for which he was qualified in 1997. Mays states that Randy Sowell ("Sowell") and Stephen Bland ("Bland") were set up in 1997, and had less experience than Mays. In the Complaint filed in his case, however, Mays states that he has been denied promotions from March of 1998 until the present. *See* Complaint ¶ 8. As the court indicated to the attorneys at the pre-trial conference held in this case, because putative claims based on promotions prior to March of 1998 are outside of the scope of the claims asserted in the Complaint, those claims are not before the court. The court will, however, look at the evidence relevant to those promotions to the extent that those promotions are offered as evidence of pretext.

Mays has also pointed to the promotions of two individuals named Richard Zeanah ("Zeanah") or Charles Duck ("Duck"). Counsel for Mays clarified at the pre-trial conference held in this case that Mays intends to use evidence of promotions made of these two individuals both as evidence of pretext and as the basis of separate failure to promote claims.

Because IP was only aware after having received Mays' response to the Motion for Summary Judgment that he challenged the promotions of Duck and Zeanah, IP's grounds for summary judgment based on the prima facie case are asserted in rebuttal in its Reply brief.

█ IP first argues that Zeanah's most recent temporary promotion was made on July 16, 1998, more than 180 days prior to Mays's filing of the EEOC charge and is, therefore, time-barred. His § 1981 claim would not, however, be so barred. *See Malone v. K–Mart Corp.,* 51 F.Supp.2d 1287, 1302 (M.D.Ala. 1999)(§ 1981 claims have a two year statute of limitations in Alabama). The court finds, therefore, that summary judgment is due to be granted on the Title VII claim, but cannot be granted on the § 1981 claim which is based on Zeanah's promotion. As to the promotions of both Zeanah and Duck, IP argues that it is critical to note that the Maintenance Department is organized into both the Instrument and Electrical and Mechanical departments. It is apparently undisputed that Mays has only been assigned to Instrument and Electrical ("I & E") crews while employed at IP. IP states that the promotions awarded to Zeanah and Duck were temporary positions as supervisors of the mechanical crews to which they were permanently assigned. IP argues that because Mays had never been assigned to a mechanical crew, he was less qualified. IP also argues, however, that Mays was not even qualified for the promotions awarded to Zeanah. IP points to the second affidavit of Golson in which he states that because Mays was a top mechanic on an I & E crew and Zeanah was a top mechanic on a mechanical crew, "Mays is not qualified for the temporary promotions awarded to Zeanah." Golson Second Affidavit, page 3. In the same affidavit, however, Golson states that "IP's general practice" is to fill temporary supervisory vacancies with Top Mechanics from the crew in which the vacancy arises. Id. at ¶ 4. In that same paragraph, Golson states that because Mays was never assigned to a Mechanical Crew, he "was far less qualified." *Id.* IP offers no explanation for this conflict in Golson's testimony.

█ Golson's Second Affidavit was provided with IP's reply brief. The court has considered Golson's Second Affidavit where it addressed matters that were provided in rebuttal of the Plaintiffs' evidence and arguments. With regard to the testi-

mony regarding IP's "general practice" and Mays' minimal qualifications, however, the affidavit, while offered in rebuttal, provides new evidence. IP's primary contention in moving for summary judgment was that Mays was not as qualified as the persons who received promotions. Mays has not had an opportunity to dispute Golson's testimony that he was not minimally qualified for Zeanah's promotion. It is clear that Mays disputes that he was not qualified merely because he had been in the I & E department because the attorney for Mays contended at the pre-trial conference held in this case that temporary supervisor positions are filled with persons from other departments. Considering the way in which this evidence has developed, and especially given that Golson's testimony on this point is itself in conflict, the court concludes that there is a question of fact as to whether Mays was minimally qualified for the promotions received by Zeanah which precludes summary judgment. Even though IP does not assert that Mays was not minimally qualified for Duck's promotion, the same evidence creates a question of fact as to that promotion because it was also a mechanic, rather than an I & E, position.

 Mays also states that he was qualified for any of the available set up positions in 1997, 1998, 1999, and 2000. The court cannot conclude that this broad generalization, without any identification of specific positions establishes evidence to support a claim. The court will instead examine the specific positions for which evidence has been provided.[2]

Because IP has failed to demonstrate that Mays cannot establish a prima facie case of racial discrimination in promotion based on specific promotions made from March 1998 forward, the burden shifts to IP to articulate a legitimate, non-discriminatory reason for its actions with regard to these promotions.

 As to the set up promotion made in March 1998, IP has stated in brief that Mays was not as qualified for the position as was the person hired, Lonnie Ross. In support of this contention, IP has cited to Golson's deposition in which he compares the qualifications of the two persons. IP has also provided testimony from Golson in which he stated that he did not promote Mays because a training program was going to be implemented and he wanted any person who did not have previous set up experience to go through the training before being set up as a supervisor.

With regard to the articulated reason of relative qualifications with respect to the March 1998 promotion, the court agrees with Mays that the articulated reason of relative qualifications is not a legitimate non-discriminatory reason for the decision not to promote Mays. According to the evidence which is before the court, Terry Williams ("Williams"), the supervisor whom Mays would have temporarily replaced, was asked by David Shavers ("Shavers"), Acting Assistant Maintenance Supervisor, if he could recommend someone to fill in for Williams. Williams recommended two persons, Mays and Larry Fowler. Shavers told Williams to ask Mays if he were interested. Williams Deposition, page 12. When Mays said he was interested, Shavers went to Golson and recommended setting up Mays. At this time, Golson told Shavers that Mays would be a good choice, except that the company was going to set up a supervisor training program that would require that all temporary set up people go through training before being set up, and that he was not going to set up anybody who had not been set up before as a temporary supervisor. Golson Deposition, page 35.

2. Mays also asserts that only one African American has been promoted to set up positions each year. Without more, this bare statistical evidence is insufficient to either establish a claim of disparate impact or to establish pretext. *See Brown v. American Hon-*

*da Motor Co.,* 939 F.2d 946, 952–53 (11th Cir.1991), *cert. denied,* 502 U.S. 1058, 112 S.Ct. 935, 117 L.Ed.2d 106 (1992)(statistics without an analytic foundation are meaningless).

Under this apparently undisputed evidence, Golson made a decision not to promote Mays to a set up position based on Mays' lack of training and lack of previous set up experience. Under the evidence before the court, there was no consideration of Mays' qualifications relative to the qualifications of Lonnie Ross. Relative qualifications, therefore, cannot serve as a legitimate non-discriminatory reason for the failure to promote Mays in March of 1998, because relative qualifications were not the basis of the decision. *See Joshi v. Florida State Univ. Health Center,* 763 F.2d 1227, 1235 (11th Cir.)(stating that if the employer does not consider the plaintiff's qualifications at the time that the decision is made, the employment decision cannot be defended on the basis of relative qualifications).

■ Merely because relative qualifications cannot serve as a legitimate non-discriminatory reason does not mean, however, that summary judgment must be denied as to the March 1998 promotion. Mays must show that each of the articulated reasons for the decision is unworthy of credence. *See Combs,* 106 F.3d at 1529. The other articulated reason for Golson's decision was the reason given by Golson to Shavers, that is, that the company was going to implement a training program, and Mays did not have the training or previous set up experience.[3]

■ Mays has offered several different arguments and pointed to various portions of depositions and documents in an attempt to establish that IP has failed to meet its burden of articulating a non-discriminatory reason. Mays has argued generally that because the set up positions are not posted, the promotion system is inherently prejudicial to African Americans. While failure to post a position may be relevant to particular claims, the court cannot conclude that it precludes IP from articulating any non-discriminatory reasons for the March 1998 promotion. Specifically with regard to the March 1998 promotion, the non-posting of the position is not relevant since Mays was expressly considered for the position. Accordingly, the court concludes that IP has met its burden in articulating a non-discriminatory reason as to the March 1998 promotion.

■ Mays also argues that the articulated reason is false. He points out that there is no training program at IP. Mays lists several reasons for his argument that Golson's statement that a training program was planned is untrue. Mays provides testimony from Williams, the supervisor whom Mays would have temporarily replaced in March of 1998, who states that in his opinion Mays' race played a part in IP's decision to not promote Mays. *See* Williams Deposition, page 25. While the court cannot rely on this lay opinion as evidence of discriminatory intent, the court will examine the factual basis given by Williams as the basis for his opinion. *Cf. Carter v. City of Miami,* 870 F.2d 578, 585 (11th Cir.1989)(subjective conclusion that there was racial discrimination without supporting evidence is insufficient to establish pretext).

Williams states that he formed his opinion based on the fact that white employees were set up after the incident with Mays. *See* Williams Deposition, page 25. Williams testifies in his deposition that after the incident with Mays, D.W. Smith was set up in a temporary supervisor position and that D.W. Smith had never been set up as a supervisor before. *Id.* at page 22.

Golson states in his affidavit that prior to the supervisory vacancy arising in July of 1998, to which D.W. Smith was promoted, he learned that the developmental skills training program would be imple-

---

**3.** Mays has also argued that at one point Golson stated that he told Shavers to say that the position was denied because of the training program, but that actually they had no openings. To the extent that the lack of openings should be considered an articulated reason for the denial of promotion, which has been undermined, Mays still must demonstrate that all of the articulated reasons are pretextual. *See Combs,* 106 F.3d at 1529.

mented before the supervisory training program; therefore, he decided that maintenance mechanics did not have to complete the planned supervisory training before being set up. Golson Affidavit ¶ 12. So, according to Golson, he made the decision to promote D.W. Smith to the position even though D.W. Smith did not have previous supervisory experience and had not yet been through the training program because he had learned that the training program would be delayed. IP has also provided the rebuttal affidavit of Lynne Austin, Human Resource Manager, in which she states that Willis Potts, a Senior Vice President in IP's corporate office in Savannah, Georgia, informed the Prattville paper mill in May of 1998 that the supervisor training program could not be implemented until it had been approved for the 1999 budget. Austin Second Affidavit, pages 4–5.

Mays has not presented evidence which contradicts the explanation from Golson and Austin of the timing of the delay of the training program evidence. Mays has attempted to show that the plan to have a training program itself never existed. Mays' evidence in support of this contention is that when Mays told Eddie Pope, the plant Resident Manager, that he had been told that he was not promoted to the set up position because of the training program, Pope responded "Well, someone lied to you. There is no such program. There isn't one now, and there never will be as long as I'm plant manager." Mays Deposition, page 183.

In support of its Motion for Summary Judgment, IP has provided the affidavit of Austin in which she explained that a task force was assembled which consisted of herself, Maintenance Superintendent Jim Gonstad ("Gonstad"), Assistance Maintenance Superintendent Keith Golson, Pulp Mill Superintendent Lane Sellers, and other mill managers. Austin Affidavit ¶ 3. She stated that this task force visited paper mills in Alabama, Louisiana, Georgia, and Virginia to study training methods. *Id.* This evidence is consistent with Pope's testimony in his deposition that he never

told Mays there was not a training program for set up supervisors. *See* Pope Deposition, page 35. The court need not determine, however, whether Mays' testimony as to Pope's statement is sufficient to create a question of fact, because this is not a case in which Golson has testified that he decided to have a training program, then changed his mind. Instead, all of the evidence provided to the court indicates that, whether or not Pope was aware of it, a training program was being contemplated and Golson held the belief that there would be a training program. Consequently, Pope's alleged statement that there would never be a training program does not undermine Golson's articulated reason that he thought there would be a training program at the time that he denied Mays' set up promotion. *Cf. Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (to establish pretext plaintiff must show not only that report was false but that employer did not honestly believe it to be true). The court concludes, therefore, that Golson's explanation as to the timing of the decision to delay the training program both establishes why he promoted a white person who had not had previous experience, undercutting the factual basis for Williams' opinion, and establishes that he believed that there would be a training program when he denied Mays the March 1998 set up promotion.

Considering all of Mays' arguments, the court concludes that Mays has failed to demonstrate that Golson's articulated reason of the planned training program is false. Mays may, however, also demonstrate pretext by providing evidence of racial animus on the part of Golson. *See Combs*, 106 F.3d at 1528. IP states that there is no such evidence. IP points out that there is no evidence that Golson made any racial comments. IP states that Golson has in fact been instrumental in getting Charles Everage, an African–American employee, to accept temporary promotion to supervisory positions and has encouraged another African–American employee to apply for promotion to a tem-

porary planner position. IP states that Mays is the only African American top mechanic Golson has not approved to be set up. IP also points to evidence that other African Americans have been promoted to set up positions.

Mays attempts to provide evidence of racial animus on the part of Golson, as was discussed above, in the form of testimony from Williams, who states his opinion that Mays was denied the first set up position on the basis of race. Such testimony is the type of lay opinion which courts have found to be inadmissible. *See Mitroff v. Xomox Corp.,* 797 F.2d 271 (6th Cir.1986)(opinion as to pattern of age discrimination inadmissible as lay opinion). Although Williams expressed in his affidavit that he formed this opinion based on the fact that white persons were set up without having supervisor experience after Mays was denied a set up position, the court has earlier examined and rejected the factual predicate of Williams' opinion, and also does not find that Williams' opinion itself, which draws a legal conclusion, is the appropriate subject of lay opinion testimony.

Mays also offers evidence that Golson did not investigate complaints of race discrimination. Mays argues that in March of 1999 all of the African American Maintenance Mechanics requested a meeting with Eddie Pope ("Pope"), the Resident Manager, to complain about racial discrimination. According to Mays, the employees told Pope that complaining to their Superintendent and Supervisors was not working. Golson testified that he was told that several African American employees met with Pope to tell him that they thought they were being treated differently on the basis of race. Golson Deposition, page 68. Mays provides testimony from Golson in which he states that he is aware that complaints were made, but that he did not investigate the complaints.[4] Mays also

provides evidence that before Golson learned of the meeting with Pope, he went to some of his employees and asked them about complaints and that some of them had racial complaints. Golson Deposition, page 84. Mays then argues that Golson did not report the complaints to the department of human resources as was required by IP policy. Mays also states that he complained to Golson of discrimination and cites to a page of his deposition which is not included in his submission of evidence to the court.

IP responds in two primary ways to this evidence. First, IP contends that there is no evidence that Golson bore any responsibility to investigate complaints of discrimination which were made directly to the Resident Manager, Pope. Second, IP argues that at most this evidence establishes that Golson failed to follow through on a responsibility to investigate complaints, and that to be probative of racial animus, Mays would have to show that Golson followed through on the complaints of white employees.

Mays apparently does not intend to argue that Golson's animus should be inferred because he did not investigate complaints which were made by African Americans, but because he did not investigate complaints of racial discrimination. Under the former characterization, it may be that there would have to be some evidence of disparate treatment in investigation. *Cf. Gallow v. Autozone, Inc.,* 952 F.Supp. 441, 448 n. 6 (S.D.Tex.1996)(failure to investigate a complaint about a co-worker does not establish pretext where there was evidence that practice was followed without regard to race). Under the latter characterization, the comparative evidence is not needed. The court must instead examine the evidence to see if it is probative of any racial animus on the part of Golson.

---

4. Mays also states that he complained about a white employees' use of a racial epithet. Mays states the employee was told to apologize to Mays. There is no evidence that Golson was aware of this comment, or that he

was aware that any complaint had been raised, so the court must conclude that this evidence is irrelevant to the question of any animus on the part of Golson.

Mays has provided the court with excerpts from Golson's deposition in which Golson was repeatedly asked why he did not investigate the complaints of discrimination which were made to Pope. He was also asked if he was in violation of IP policy by not investigating complaints of discrimination of which he was aware. Golson stated that he was responsible for investigating the complaints of those over whom he had direct supervision. Golson Deposition, page 72. Golson also testified, however, that he should try to get to the bottom of complaints if his boss tells him to do so, that if "Eddie Pope wanted me to know what was going on at that meeting he would have told me," and that "If my boss tells me what complaints to investigate, I will do so." Golson Deposition, pages 68, 79, 82. Mays has not provided any evidence to establish that Golson, rather than Pope, should have decided how to investigate the complaints brought by the employees directly to Pope. In other words, while there is evidence that Golson bore a responsibility to investigate complaints of discrimination of those within his direct supervision, there is no evidence which indicates that the same responsibility attached in a situation in which his superiors were the ones who received the complaints of discrimination. There is instead evidence in Golson's testimony that he thought he had to be directed by Pope. The court cannot conclude, therefore, that Golson's purported failure to investigate complaints of discrimination which were brought directly to the Resident Manager and which Golson only learned about through his boss, Gonstad, is evidence of racial animus on the part of Golson.

Mays' evidence regarding complaints which were voiced directly to Golson presents a different question. As stated above, in his deposition, Golson acknowledged that he had a responsibility to investigate complaints of discrimination by those under his supervision. In response to Mays' contention that Golson did not investigate Mays' complaint of discrimination, IP has argued that Golson did meet with Mays on March 16, 1999 to discuss concerns about

set up opportunities. IP also argues that evidence of complaints made by other mechanics is inadmissible to prove that IP discriminated against Mays because it would create a trial within a trial.

Mays has set out a series of questions and answers which was taken from Golson's deposition. Mays has not indicated in the quoted material where there is a break in page or where material has been excerpted. The resulting quote is somewhat misleading. For instance, Mays quotes a question wherein Golson is asked whether prior to Gonstad talking to Golson, if Golson was aware that some of the African Americans in the Maintenance Department felt that they were being treated differently on the basis of their race. The next question in the brief is whether he conducted an investigation or found out whether there was any merit to the complaints, and the answer in the brief is that he did not. Brief, page 83. In the deposition, however, the question which immediately follows the question about Golson's awareness of complaints prior to talking with Gonstad is a question and answer wherein Gonstad said that to investigate the complaints, "he talked to some of the blacks about it, yes." Golson Deposition, page 83. Rather than rely on Mays' citation of evidence, therefore, the court has independently read the relevant pages of Golson's deposition. When asked why he did not specifically investigate a complaint, Golson stated that he "didn't know where to go with it." *Id.* Golson also stated that he investigated to the extent that he thought was necessary. *Id.* at 84. He explained that he needed more specifics to warrant a further investigation relative to complaints of one employee, Mack Harmon, because the complaint was only general. *Id.* at 85. Golson further states that he did not think further investigation would do any good. *Id.* Golson also testified that he never reported any of the complaints to human resources.

IP has provided this court with a copy of the company policy against discrimination

which states that if a person has a good faith belief that that person or any other employee has been the victim of harassment, discrimination, or any "other violation of the policy," the conduct should be reported to management. Defendant's Exhibit 5. The policy also provides that all complaints of conduct will be promptly investigated and dealt with appropriately. *Id.* The policy further provides that persons in management positions are to bring to the attention of their supervisor or manager, their Human Resources Representative, the Director or Ethics and Business Practice, or the Legal Department any "violation of the policy" of which they become aware. *Id.*

The issue here is not whether there was or was not discrimination by IP against other employees, that would necessitate a trial within a trial, but whether Golson's failure to investigate complaints of race discrimination beyond merely talking with the complaining employees is evidence of his racial animus.

The evidence before the court is that Golson took it upon himself to got to certain African American employees and talk to them about their complaints. Once he heard the nature of their complaints, he concluded that there was no further need to investigate. Under IP's policy, a manager's responsibility is to report any "violation of the policy," not any complaint. Given the fact that he sought out African Americans and asked about complaints, and given that, with respect to these complaints and Mays' complaint, the policy only placed a responsibility upon him investigate and to report a "violation of the policy," the court cannot conclude that the evidence before the court is evidence of any racial attitude on the part of Golson. Golson's deposition testimony may establish that he might not have understood properly his function in the complaint procedure, or what would be a sufficient investigation to rule out that there had been a violation of the policy, but it does not support an inference that Golson harbored racial animus. Accordingly, whether or not Golson could have or should have conducted more thorough investigations, merely because the nature of the complaints about which he spoke to the complainants, and which he apparently concluded were unsubstantiated, involved race discrimination does not provide " 'significantly probative' evidence on the issue to avoid summary judgment." *Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988). Accordingly, the court concludes that summary judgment is due to be GRANTED as to the § 1981 and Title VII claims based on the March 1998 promotion.

The majority of Mays' response to the Motion for Summary Judgment is directed to the claims based on the March 1998 promotion. Mays spends a considerable amount of time arguing that his qualifications for the March 1998 promotion are not at issue. As explained above, the court agrees with this proposition. Mays' qualifications are at issue with respect to other promotions, however. There are three promotions at issue which are promotions made of D.W. Smith ("Smith"), Zeanah, and Duck, in which Golson was the decision maker, and for which IP has articulated the non-discriminatory reason of relative qualifications. The court has endeavored to apply the arguments made by Mays relative to the March 1998 promotion, by which he seeks to demonstrate that relative qualifications are pretextual, to all of the promotion claims to which those arguments are relevant.

With regard to D.W. Smith's promotion in 1998, IP argues D.W. Smith was more qualified to be temporarily appointed as supervisor. IP argues Smith had more seniority as a top mechanic because he had been a top mechanic for 20 years and was more experienced in the chemical/steam and power area. *See* Golson Affidavit. IP states that Mays had only been a top mechanic for less than three years and most of his experience was in the pulp and paper area. IP also points out that in his deposition, Mays agreed that Smith had more years as a top mechanic and more

experience in the chemical area. Mays Deposition, pages 170–71.

Mays has not provided evidence to show that Mays rather than Smith was more qualified. Instead, Mays has challenged IP's articulation of the legitimate non-discriminatory reason stating that the position was not posted, and that D.W. Smith was not told to or required to complete a training program.

It is not clear from Mays' argument that the position was not posted whether or not he is contending that he was not considered for the position at issue. If he were not even considered, then the issue of relative qualifications could not present a legitimate non-discriminatory reason for, as was discussed above, it would not have been the basis of the decision. *See Joshi,* 763 F.2d at 1235. In his affidavit, Golson stated, "I determined that Smith was more qualified for the temporary promotion than Mays." Golson Affidavit, page 6. Golson's testimony, therefore, is that Mays was considered for the position. Mays does not present any evidence which contradicts this testimony to prevent IP from relying on qualifications as a legitimate non-discriminatory reason. In addition, Mays' contention that the failure to post the position prevents IP from articulating a legitimate non-discriminatory reason is similarly undermined by the evidence that Mays was in fact considered for the position.

The only evidence to which Mays cites in an attempt to undermine IP's explanation is that D.W. Smith is white, this was his first set up promotion, and Smith was not required to attend training prior to being promoted. The evidence before the court is that the training program was planned as of March 1998, then was delayed, and the decision to delay the program occurred in May 1998, before Smith was promoted in July 1998. Mays has not pointed to evidence which would undermine reliance on the timing of the decision not to implement the training program. As indicated above, however, Mays has provided comparative evidence of the promotions of other employees in an attempt to demonstrate that IP's reliance on relative qualifications is not to be given credence by the court. Two of these promotions, the promotions of Zeanah and Duck, also form the basis of separate claims. The court will, therefore, evaluate Mays' arguments as to the legitimacy of the articulated reasons, and as to whether those reasons are pretextual, with regard to the D.W. Smith, Zeanah, and Duck promotions simultaneously.

Mays' initial argument in this regard is that IP's articulation of relative qualifications does not meet its burden of articulating a legitimate, non-discriminatory reason for the promotions at issue because qualifications for positions were based on subjective criteria. Mays relies on evidence regarding the promotions Zeanah and Duck to argue that IP has failed to articulate a legitimate non-discriminatory reason of relative qualifications because IP has relied on subjective criteria.

In *Miles v. M.N.C. Corporation,* 750 F.2d 867 (11th Cir.1985), the Eleventh Circuit stated that subjective and vague criteria may be insufficient reasons given by an employer because the reasons do not allow a reasonable opportunity for rebuttal. In *Miles,* the court concluded that the defendant had not met its burden because the only reason given was that the plaintiff was not a good worker and that the comparator was. *Id.* at 872. The Eleventh Circuit has subsequently explained that employment decisions may legitimately be made based on subjective criteria as long as the criteria are capable of objective evaluation and are stated with a sufficient degree of particularity. *See EEOC v. Joe's Stone Crab, Inc.,* 220 F.3d 1263, 1281 n. 17 (11th Cir.2000).

Mays states that because IP does not document performance of its employees, promotions are made on the basis of subjective opinions only and, therefore, these subjective evaluations cannot serve as legitimate, non-discriminatory reasons for promotion decisions. Mays has pointed to Golson's statements in his deposition that

he refused to accept the recommendation of a supervisor to promote Zeanah to the position of temporary maintenance supervisor because he had not performed well in the past. Mays then points out that Zeanah was set up as a temporary maintenance supervisor in 1996, 1997, and 1998. Mays points to similar evidence regarding Duck, arguing that Golson denied Duck a set up position based on his past performance, but did not document this in his personnel file. Mays then points out that Duck was set up as a supervisor in 1999. Mays points out that none of the concerns Golson noted with regard to performance problems with Duck or Zeanah was reflected in their personnel files.

Mays argues that because Zeanah and Duck were promoted even though Golson himself had concerns about their performance, Golson did not actually consider qualifications before determining who would be given set up supervisor positions. As to Duck, the court finds this argument unavailing because Golson has testified that his concerns about Duck had been alleviated by Duck's improvement in performance when he decided to promote Duck. *See* Golson Deposition, page 61. In other words, because the denial of a promotion was followed by an improvement in his performance before Duck was again promoted, the court cannot conclude that the evidence regarding Duck establishes that Golson did not actually consider qualifications.

As to Zeanah, the question is more complicated because the timing of the promotion decisions regarding Zeanah is unclear. As Mays points out, Golson stated in his deposition that he could not remember when he denied Zeanah a set-up position, but he thought that it occurred in 1996 or 1997. Golson Deposition, page 89. Golson has clarified in his subsequent affidavit that the denial of the set up position based on past performance occurred in 1998. *See* Golson Second Affidavit. Golson also states in his second affidavit that he promoted Zeanah to a set-up position on July 16, 1998. There is no evidence to

indicate whether the denial of the set-up position was before or after July 16, 1998.

Because of the lack of evidence on this issue, a question has been raised as to whether Zeanah, rather than Mays, was actually set up in a supervisor position following, but still in the same year as, a decision to deny Zeanah a set-up position based on his poor work performance. IP, of course, argues that Zeanah was more qualified because he had experience in the mechanic department, and had more experience than Mays. The difficulty with this explanation, however, is that, given the lack of evidence as to when Zeanah was denied a promotion for past performance problems, it could mean that, drawing all inferences in favor of the non-movant, Golson had to weigh the relative qualifications of the two individuals and determine that past performance problems were less significant than the type of experience that the employee had, based on Golson's own opinion, with no documented criteria for so-concluding. This would be a subjective determination that Mays would be unable to rebut and would, therefore, be an insufficient reason for the employment action. *See Joe's Stone Crab, Inc.,* 220 F.3d at 1281 n. 17. IP's explanation could also mean that, given that it is unclear when Zeanah was denied a promotion based on past performance, qualifications were not considered when Mays was denied the promotion. Under either interpretation of the evidence, including the fact question which has been raised as to the timing of the promotion decisions, IP's explanation is either insufficient, or has been called into question. Accordingly, the court concludes that the claims based on the promotions of Zeanah, Duck, and D.W. Smith must all proceed to trial because there is evidence which undermines IP's articulation of the legitimate, non-discriminatory reason that Golson made decisions based on relative qualifications.

Also in an attempt to establish that reliance on relative qualifications is pretextual, Mays has argued that Bland and Sowell

were set up in 1997, even though they had each only been made a Top Mechanic in the previous year, and became top mechanics after Mays, and so had less experience. Although Mays cites to documentary evidence, the evidence does not support his argument. Mays cites to an exhibit which encompasses several pages and is somewhat difficult to interpret. It appears from this documentary evidence that both Sowell and Bland were promoted to top mechanic on January 19, 1996. This court's interpretation of the documentary evidence is supported by rebuttal evidence provided by IP. *See* Golson's Second Affidavit ¶ 7. Mays has stated that he was promoted to top mechanic in January of 1996. IP's evidence indicates that the date of Mays' promotion was January 19, 1996. *See* Defendant's Exhibit 2. The court cannot conclude, therefore, that Mays has created a question of fact as to whether he was more qualified than Sowell or Bland. Accordingly, this evidence does not establish that Golson's explanation that he examined relative qualifications is pretextual.

■ The final promotion which is the subject of a separate claim for relief is the February 1999 set up position to Temporary Maintenance Supervisor/Planner position which Reese received. Mays has argued that the position was not posted, that no one asked if he was interested, and that he was more qualified for the position than was Reese.

IP argues that Mays has testified that he does not know who made the decision to promote Reese to the Planner position. IP indicates that the decision was made by Julian Johnston ("Johnston"), and provides Johnston's Affidavit in support of the Motion for Summary Judgment. Johnston stated in his affidavit that Mays never expressed an interest in being set up as a planner and that Johnston had no idea Mays was interested in a temporary planner assignment until Johnston learned of

Mays' suit. *See* Johnston Affidavit. Johnston also stated in his affidavit that Mays was not as qualified as Reese.

The evidence presented by IP in the form of Johnston's affidavit is not entirely clear. He stated that he was not aware that Mays was interested in the position. Unlike the evidence regarding Golson's promotion of Smith, there is no evidence which temporally links the decision to consideration of Mays' qualifications. From other evidence presented in this case, it appears that the normal practice was to ask a potential set up person if that person was interested in the promotion. Drawing all inferences in favor of Mays, the court concludes that at least a question of fact has been raised as to whether Mays was considered for the position.

■ As was discussed above, the articulated reason of relative qualifications is insufficient as a matter of law where the plaintiff is not considered for the position. *Joshi*, 763 F.2d at 1235. Under the framework provided by the Supreme Court in *McDonnell Douglas Corporation v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), therefore, the question of fact created as to this claim means that IP has failed to articulate a legitimate, non-discriminatory reason for the denial of the February 1999 position. Since IP has not articulated a legitimate, non-discriminatory reason, Mays bears no burden of establishing pretext at this stage in the proceedings. *See Burdine*, 450 U.S. at 256, 101 S.Ct. 1089. Accordingly, IP has failed to show that it is entitled to summary judgment on this claim.[5]

■ IP finally moves for summary judgment on the issue of punitive damages, citing this court to *Kolstad v. American Dental Association*, 527 U.S. 526, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999). In *Kolstad*, the Supreme Court determined the circumstances under which a court can

---

5. Of course, IP may ultimately prevail on this claim if it proves by a preponderance of the evidence that it would not have promoted Mays anyway. Because this argument has

not been properly presented to the court at this stage of the proceedings, however, the court finds that this is an issue, if it is raised, which must be raised at trial.

award punitive damages under Title VII. The Supreme Court held that there must be a showing that the employer acted with malice or reckless indifference to the plaintiff's federally protected rights which requires either an evil intention or a conscious indifference to these rights. *Id.* at 534–35, 119 S.Ct. at 2124; *see also Alexander v. Fulton County, Georgia,* 207 F.3d 1303 (11th Cir.2000). The Supreme Court explained that in addition to a showing of "malice" or "reckless indifference" on the part of individuals, a plaintiff must also impute liability for punitive damages to the employer. *Id.* at 2126. The Supreme Court explained that general agency principles had to be modified somewhat to serve the purposes of Title VII so that an employer cannot be held vicariously liable for the discriminatory employment decisions of managerial agents where the decisions are contrary to the employer's good-faith efforts to comply with Title VII. *Id.* at 2129.

IP argues that Mays cannot show that IP acted with malice or reckless indifference to his federally protected rights, and any alleged discrimination in denial of a set up promotion was contrary to IP's good faith efforts to comply with Title VII. IP points to its Equal Employment Policy and states that it provides an internal complaint procedure and states that IP frequently gave EEO training to its employees and managers.

Mays responds that the issue of punitive damages is one properly left for trial and that Mays is clearly entitled to punitive damages in light of IP's outrageous and egregious conduct.

The court cannot conclude at this stage of the proceedings that Mays has not established reckless conduct as a matter of law. Furthermore, in this case, the court finds that Golson's deposition testimony that after discussing a complaint of discrimination he "did not know where to go with it," Golson Deposition, page 83, is some evidence that management employees were not well-trained in the policy, which, at this stage of the proceedings,

undermines IP's contention that it undertook good faith efforts to comply with Title VII. Even though the decision maker at issue in one claim is Johnston, rather than Golson, the court cannot conclude at this stage of the proceedings that a question of fact as to whether employees were properly trained in the policy could not be relevant to employees other than Golson. Accordingly, while the issue of the propriety of punitive damages may be raised at a later stage of the proceedings, the court concludes that, at this time, a sufficient question of fact has been created so as to defeat summary judgment on the issue of punitive damages.

## V. CONCLUSION

As was discussed above, the Motion for Summary Judgment is due to be and is ORDERED GRANTED in part and DENIED in part as follows:

1. The Motion for Summary Judgment is GRANTED, and judgment is entered in favor of the Defendant and against the Plaintiff, James E. Mays, as to the Title VII and § 1981 claims based on the March 1998 promotion of Lonnie Ross and the Title VII claim based on the promotion of Richard Zeanah.

3. The Motion for Summary Judgment is ORDERED DENIED as to, and the case will proceed on, the Title VII and § 1981 claims based on the July 1998 promotion of D.W. Smith, the promotion of Charles Duck, and the February 1999 promotion of Fred Reese, and on the § 1981 claim based on the promotion of Richard Zeanah.