Anne L. ADAMS, Plaintiff-Appellant,

v.

Thomas C. REED, Secretary of the Air Force, Defendant-Appellee.

No. 77–1543
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Feb. 15, 1978.

Rehearing and Rehearing En Banc
Denied April 7, 1978.

---

* Rule 18, 5 Cir.;  see *Isbell Enterprises, Inc. v. Citizens Casualty Co. of New York et al.*, 5 Cir., 1970, 431 F.2d 409, Part I.

Allen W. Howell, Montgomery, Ala., for plaintiff-appellant.

D. Broward Segrest, U. S. Atty., Kenneth E. Vines, Asst. U. S. Atty., Montgomery, Ala., for defendant-appellee.

Before BROWN, Chief Judge, RONEY and HILL, Circuit Judges.

BROWN, Chief Judge:

Plaintiff, Anne L. Adams, a civilian employee of the Department of the Air Force, brought suit in the District Court under the Equal Employment Opportunity Act of 1972, 42 U.S.C. § 2000e–16, which extended Title VII's protections and remedies to federal employees. The District Court Judge held a trial de novo [1] and ruled that no discrimination based on sex was evident in the defendant's failure to award Adams the promotion she sought. We affirm.

In 1973, officials at the Historical Research Center of the Maxwell Air Force Base announced an opening for an archivist at a GS–11 level. Adams, a GS–9 technical information specialist, was one of five employees listed as "highly qualified" for this position.[2] Three of the five candidates list-

1. In *Chandler v. Roudebush*, 1976, 425 U.S. 840, 96 S.Ct. 1949, 48 L.Ed.2d 416, the Supreme Court held that despite the existence of an adverse administrative determination, federal employees had the same right to a trial de novo of their employment discrimination claims as workers in the private sector enjoyed under Title VII.

2. The list, a "Certificate of Eligibles," was prepared by the Civilian Personnel Office pursuant to the screening procedures followed in making promotions. Mr. Hix, chief of technical systems at the Historical Research Center, received a preliminary screening from the staff of the Civilian Personnel Office and examined the candidates to determine whether they were in fact eligible and to rank their qualifications. Hix ranked Meyer as first among the candidates, followed by Judy Endicott and Gloria Atkinson, with plaintiff and a Mr. Hughes both ranked fourth. The staff of the Civilian Personnel Office had originally ranked Hughes as

ed, including the plaintiff, were female. Adams first declined to be considered for the position and Dr. Mauer, the selecting officer, chose Carl A. Meyer from the list of candidates. On the day this decision was made, but before it was made public, Adams notified Dr. Mauer that she had changed her mind and now wished to apply for the promotion. Dr. Mauer reconsidered all the candidates and adhered to his original choice. One of the other unsuccessful candidates, Gloria Atkinson, then filed an informal complaint with the Civilian Personnel Office questioning Meyer's qualifications for the job. Two special panels were convened to rate the pool of candidates, and both found Meyer to be qualified for the promotion.[3] Adams then filed a formal Equal Employment Opportunity complaint of sex discrimination with the Civil Service Commission. In August 1975, the Appeals Review Board affirmed the Complaints Examiner's finding that no discrimination had been shown. However, the Board did find that Meyer lacked the necessary educational credits or experience to be qualified for the archivist position, making his promotion erroneous and "procedurally defective." The Board ordered Meyer's promotion vacated and recommended that the candidates considered for the position be limited to those who had originally been listed as qualified, including the complainant, Adams. Judy Endicott was then selected from the remaining four candidates to fill the position.

In September of 1975, Adams filed suit under Title VII of the Civil Rights Act of 1964, as amended by the Equal Employ-

ment Opportunity Act of 1972, 42 U.S.C. §§ 2000e–5 and 2000e–16, claiming that the failure to promote her, and the promotion of Carl Meyer, who was (i) male; (ii) unqualified; and/or (iii) less qualified than the plaintiff, constituted sex discrimination. To support her claim, Adams urged that statistical evidence showed a pattern of sex discrimination in promotions at the Historical Research Center, and sought relief in the form of a retroactive promotion with back pay and benefits. In addition, Adams claimed that she had been subjected to harassment and reprisals for filing her discrimination complaint. The District Court enjoined any further reprisals but denied her claim for damages for mental distress.[4] Adams appeals from the finding that there was no actionable discrimination in the promotion decision and from the denial of attorneys' fees.

In a Title VII suit, the plaintiff carries the initial burden of proving a prima facie case of discrimination. The elements of a prima facie case were delineated in *McDonnell Douglas Corporation v. Green*, 1973, 411 U.S. 792, 802, 93 S.Ct. 1817, 36 L.Ed.2d 668, 677: (i) the complainant must belong to a protected minority; (ii) must apply and be qualified for a job for which the employer is seeking applications; (iii) be rejected for the job; and (iv) the employer must then continue to seek applicants with the complainant's qualifications.[5] When a plaintiff meets these criteria, the burden shifts to the defendant to show, by a preponderance of the evidence, that it had legitimate, nondiscriminatory reasons for its promotion decision.[6] If the defendant

---

first among the candidates, with plaintiff third and Meyer last.

**3.** The first panel, composed of three persons from the Civilian Personnel Office, reviewed Meyer's qualifications on December 3, 1973, and a second panel, composed of three different persons from the same office, reviewed the candidates again on January 29, 1974. The findings of these two panels resulted in no significant changes in the order in which the candidates were ranked. Both panels placed plaintiff and Meyer in the last two positions on the list of five who were judged highly qualified for the promotion.

**4.** The defendant does not appeal from the injunction against retaliatory harassment.

**5.** While *McDonnell Douglas* involved allegations of racial discrimination, the criteria outlined by the Supreme Court are equally applicable to sex discrimination, "since, under Title VII, such discrimination is fungibly illegal with racial prejudice." *East v. Romine, Inc.*, 5 Cir., 1975, 518 F.2d 332, 337 n. 4.

**6.** Adams was a qualified female applicant and was rejected. However, we have some difficulty in holding that she meets the last enumerated criterion in the *McDonnell* test. Because

can meet this burden, the plaintiff must then prove, by a preponderance of the evidence, that the articulated reason is a pretext for discrimination. *McDonnell Douglas Corporation v. Green, supra,* 411 U.S. at 802–804, 93 S.Ct. at 1824–1825, 36 L.Ed.2d at 677–79; *Turner v. Texas Instruments, Inc.,* 5 Cir., 1977, 555 F.2d 1251, 1255. The District Court's Memorandum Opinion does not follow the *McDonnell* structure with precision. However, a review of the record leads us to conclude that the District Court's ultimate finding that plaintiff "did not fail to achieve promotion as a proximate result of sexual discrimination" is supported by the requisite subsidiary facts.[7]

Two major points convince us that the District Court Judge's finding of no discrimination is supported by the evidence. First, Dr. Mauer testified as to the criteria he used in evaluating and selecting Carl Meyer over the other four candidates. These criteria are clearly related to the skills demanded by the position and are sufficiently capable of objective evaluation as to be unlikely pretexts for discrimination.[8] Second, the individual finally selected to fill the position after Carl Meyer was found unqualified was a woman.[9] The District Court combined these two factors with the consistent results of the different rating panels evaluating plaintiff as ranking either fourth or last in the field of five candi-

she had withdrawn her name from consideration when Carl Meyer was initially selected for the archivist position, Adams suffered no rejection and therefore no discrimination at this stage. When she asked to be considered for the position, Dr. Mauer reopened the review of all the candidates. When Meyer was promoted, the defendant employer sought no further applicants. However, *McDonnell Douglas* makes it clear that the enumerated criteria are not "wooden absolutes," *Peters v. Jefferson Chemical Company,* 5 Cir., 1975, 516 F.2d 447, 450. In *Peters,* this Court found that the final criterion of *McDonnell* was not met when the employer left a position vacant after denying it to the complaining employee. In this case, Meyer, a male, was promoted to the position that plaintiff, a female, applied for, was qualified for, and was refused. While this alone does not constitute a prima facie showing of discrimination, *see, e. g., Olson v. Philco-Ford,* 10 Cir., 1976, 531 F.2d 474, we are unwilling to use the *McDonnell* tests as overly technical "absolutes" and therefore do not rest our decision on plaintiff's questionable status under the final criterion.

7. The standard of review applied under F.R. Civ.P. 52(a) to assess the correctness of a District Court's finding of nondiscrimination is set forth in *Causey v. Ford Motor Company,* 5 Cir., 1975, 516 F.2d 416, 420–21.

8. Dr. Mauer testified that the following factors influenced his selection:

I tried to evaluate all of the five people on the list in terms of their education, their experience, supervisory experience, their performance, their personality, habits, education, for example; I found that Mr. Meyer and Mrs. Endicott both had Master's Degrees, Mrs. Endicott in history, from Kansas State University, if I remember correctly; Mr. Meyer from Michigan State University where he had majored in

literature and studied American Civilization under emminent Historian Russel Nye. The other candidates, I believe, all had Bachelor's Degrees; Mrs. Atkinson from Auburn in education, if I remember correctly; Mrs. Adams from Huntingdon in sociology, and Mr. Hughes went to Huntingdon. Mrs. Adams and Mrs. Atkinson both had some graduate work but had not completed their degrees.

[Tr. at 227.]

\* \* \* \* \* \*

The ability to plan, develop, initiate, carry through a project with some kind of general guidance without careful detailed supervision. I thought this was very important for this particular job, which was being set up to solve some problems, to enhance the services of the circulation section. It would require someone with that planning and development ability to analyze the problems that existed, develop a plan and carry it into action; those were the main things I think.

[Tr. at 234.]

We have held invalid promotion selection procedures that "require the [evaluator's] subjective opinion concerning the candidates' 'adaptability,' 'bearing, demeanor, manner,' . . . and 'social behavior'" on the ground that "[s]uch high-level subjectivity subjects the ultimate promotion decision to the intolerable occurrence of conscious or unconscious prejudice." *Robinson v. Union Carbide Corporation,* 5 Cir., 1976, 538 F.2d 652, 662; *Rowe v. General Motors Corporation,* 5 Cir., 1972, 457 F.2d 348, 358–59. The factors relied on in the present case to distinguish among the various candidates are sufficiently susceptible of objective determination to escape any such defect.

9. Indeed, Meyer's advancement came at the expense of men as well as women; Mr. Hughes, the consistently first-ranked candidate, was also passed over for promotion by Mauer and Hix in favor of Carl Meyer.

dates and concluded that no discrimination was evident in the decision not to promote Adams. We are unable to say that this is clearly erroneous. Meyer's eventual disqualification supports but by no means compels a finding that his selection over Adams was based on sex discrimination. At the time the selection was made, a rating panel had placed Meyer on the "highly qualified" list. When Meyer's qualifications were challenged after the promotion, two other panels reviewed his credentials and found him qualified. Once Meyer's promotion was vacated, plaintiff was again passed over for the promotion, but because the person selected was a woman, we cannot accept sex discrimination as a plausible explanation for this decision.

■ The plaintiff also presented statistical evidence comparing women occupying GS–10 to GS–15 level jobs at the Historical Research Center (6.3%) with women employed at such levels at the Air Force Base (17.2%) and women holding library and archive positions in the federal service (62.5%), and employed nationwide (78.4%). The District Court found that the comparisons gave "no substantial evidence of discrimination on the basis of sex." Plaintiff argues on appeal that the numbers presented establish or support a prima facie case of discrimination. While we recognize that " [s]tatistical analyses have served and will continue to serve an important role' in cases in which the existence of discrimination is a disputed issue," *Teamsters v. United States*, 1977, 431 U.S. 324, 339, 97 S.Ct. 1843, 1856, 52 L.Ed.2d 396, 417, we do not find error in the District Court's determination that the statistical disparities revealed here, considered in the context of "all of the surrounding facts and circumstances," 431 U.S. at 340, 97 S.Ct. at 1857, 52 L.Ed.2d at 418, do not constitute a prima facie showing of discrimination. The numbers concerning the Historical Research Center are drawn from a pool too small to produce highly

valuable evidence. See *Teamsters v. United States, supra*, 431 U.S. at 339, 97 S.Ct. at 1856 n. 20, 52 L.Ed.2d at 418 n. 20. Moreover, as the Supreme Court has noted, "such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to rehire." *McDonnell Douglas Corporation v. Green, supra*, 411 U.S. at 805 n. 19, 93 S.Ct. at 1826, 36 L.Ed.2d at 697 n. 19. The evidence as to the comparisons among the candidates for the promotion leads us to hold that the District Court Judge was warranted in concluding that discrimination was not a reason for refusing to elevate plaintiff.to the archivist position. The statistical disparities are not sufficient to overcome this conclusion or independently to constitute a prima facie case of sex discrimination.

■ Finally, plaintiff contends that the District Court erred in refusing to award her attorneys' fees under 42 U.S.C. § 2000e–5(k), which provides that a court may in its discretion award the prevailing party reasonable attorneys' fees as part of costs. The District Court based its discretionary denial of fees on a notion of fairness: because the "plaintiff prevailed on one issue, [and] the Government prevailed on several," it would be inequitable for the defendant agency, the more successful of the two parties, to pay the plaintiff's fees in addition to its own expenses. While the government defeated all charges of discrimination on the basis of sex, Adams did prove that she suffered discrimination directed against her in retaliation for the Title VII complaint she filed, in violation of 42 U.S.C. § 2000e–3(a).[10]

■ The discretion to determine .the propriety of awards is committed to the trial judge. *Johnson v. Georgia Highway Express, Inc.*, 5 Cir., 1974, 488 F.2d 714, 717. In this case, we see no abuse of that discretion. We recognize that courts have upheld

---

10. 42 U.S.C. § 2000e–3(a) provides:

(a) It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment, . . . because he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter.

awards to parties who sustain some but not all of their claims, or to parties who demonstrate discrimination on the part of the defendant but are unable to prove that they were the victims. However, plaintiff's victory was on an issue that, while important, was ancillary to the core of the complaint—discrimination on the basis of sex. This partial victory is readily distinguishable from those for which courts have upheld awards of attorneys' fees. For example, courts have awarded fees to an individual plaintiff despite his failure to prove his own claim, when he successfully secures class-wide relief or an injunction against prospective discrimination, *e. g., Lea v. Cone Mills Corporation*, 4 Cir., 1971, 438 F.2d 86, and fees have been upheld for a plaintiff who settles his Title VII suit rather than securing a final judgment in court, *e. g., Parker v. Matthews*, 1976, D.D.C., 411 F.Supp. 1059. Both the propriety of a fee award and the amount of fees properly awarded are strongly influenced by the extent to which the plaintiff prevails in his suit. *E. g., Thomas v. J. C. Penney Company, Inc.*, 5 Cir., 1976, 531 F.2d 270; *Williams v. General Foods Corporation*, 7 Cir., 1974, 492 F.2d 399, 409; *Parker v. Matthews, supra*. Although Adams was sufficiently successful to come within the "prevailing party" language of the statute and was therefore entitled to the exercise of the District Court's discretion, her success was not sufficiently related to the central issue of the suit—discrimination on the basis of sex—to make the denial of attorneys' fees an abuse of that discretion.

AFFIRMED.