**Paula NORRELL, Plaintiff,**

v.

**WASTE AWAY GROUP, INC., Defendant.**

**No. CIV.A. 02–A–662–E.**

United States District Court, M.D. Alabama, Eastern Division.

Feb. 26, 2003.

J. Bernard Brannan, Jr., Montgomery, AL, for Plaintiffs.

David M. Smith, Janell M. Ahnert, Birmingham, AL, for Defendants.

### MEMORANDUM OPINION and ORDER

ALBRITTON, Chief Judge.

#### Introduction

This cause is before the court on Defendant's Motion for Summary Judgment (Doc. # 10), filed on December 27, 2002. Plaintiff brought this action in federal court on June 6, 2002, and her Complaint (Doc. # 1) charges Defendant with unlawful gender discrimination. Specifically, Plaintiff alleges that Defendant refused to promote her in violation of Title VII, 42 U.S.C. § 2000e–2(a), and that Defendant maintained employment practices that had a disparate impact on Plaintiff because of her sex in violation of Title VII, 42 U.S.C. § 2000e–2(k)(1)(A). Plaintiff claims that she has suffered damages including loss of her occupational position and lost wages and benefits as a result of these alleged illegal acts. Plaintiff seeks compensatory and punitive damages and attorneys' fees pursuant to 42 U.S.C. §§ 1988 & 2000e–5(k).

After carefully and thoroughly reviewing the submissions of the parties, the court concludes that the Defendant's Motion for Summary Judgment is due to be GRANTED.

#### Summary Judgment Standard

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to

any material fact and that the moving party is entitled to a judgment as a matter of law." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *see Lowe's Home Ctrs., Inc. v. Olin Corp.*, 313 F.3d 1307, 1310 (11th Cir.2002).

The party asking for summary judgment "always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Id.* at 323, 106 S.Ct. 2548. The movant can meet this burden by presenting evidence showing there is no dispute of material fact, or by showing, or pointing out to, the district court that the nonmoving party has failed to present evidence in support of some element of its case on which it bears the ultimate burden of proof. *Id.* at 322–324, 106 S.Ct. 2548.

Once the moving party has met its burden, Rule 56(e) "requires the nonmoving party to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324, 106 S.Ct. 2548. To avoid summary judgment, the nonmoving party "must do more than show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). On the other hand, the evidence of the nonmovant must be believed and all justifiable inferences must be drawn in its favor. *See Anderson v. Liberty Lobby*, 477 U.S. 242, 255, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

After the nonmoving party has responded to the motion for summary judgment, the court must grant summary judgment if there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c).

### Facts

The facts as presented in the submissions of the parties, viewed in a light most favorable to the nonmovant are as follows:

Defendant, Waste Away Group, Inc., ("Waste Away")[1] first hired Plaintiff, Paula K. Norrell ("Norrell") in March of 1996 for the position of inside sales representative. As an inside sales representative, Norrell's responsibilities included dealing with customer inquiries and customer service issues arising from existing accounts. At the time Norrell's employment began, she received a copy of Waste Away's employee handbook, which states that Waste Away is an equal opportunity employer that does not practice discrimination. Danny East ("East") and later Terry White ("White") served as Norrell's immediate supervisors. While in her position as inside sales representative, Norrell received performance bonuses for exceeding her sales revenue goals during each quarter of 1996 and 1997.

On her performance evaluation in August of 1996, Norrell received four "good" ratings and five "outstanding" ratings from East. East noted on the evaluation that Norrell needed to improve in the area of leadership and that she was "[b]etter at planning than organizing." Defendant's Exhibit # 7. In the additional comments section of the evaluation, East wrote "Great Job!"

---

**1.** Waste Away is a subsidiary of Waste Management Holding, Inc., which, in turn, is a subsidiary of Waste Management, Inc. Waste Away provides waste management and disposal services to its customers.

Waste Away promoted Norrell to customer service manager for the Montgomery and Opelika districts on December 10, 1997. With this new position, Waste Away increased Norrell's annual salary from $26,000 to $35,000. As a customer service manager, Norrell supervised the customer service center that dealt with customer calls and complaints from both districts. In April of 1998, Norrell received another salary increase to $36,400 annually.

In September of 1998, Waste Away again promoted Norrell, this time to district sales manager for the Opelika district. In this position, Norrell had the responsibility for developing and implementing sales and marketing plans for the Opelika district. The Opelika district included Auburn, Alabama, and Columbus and LaGrange, Georgia.[2] While in this position, Norrell received evaluations in March 2000 from Dennis Hill ("Hill") and in March 2001 from Mike Malphrus ("Malphrus"). Hill was Norrell's supervisor when she began working as a district sales manager, but Malphrus later became Norrell's immediate supervisor. Hill gave Norrell an overall rating of "good", and, out of thirteen separate categories, Norrell received twelve ratings of "good" and one rating of "outstanding."[3] After her evaluation, Waste Away increased Norrell's annual salary to $45,000 in April of 2000. Norrell also began receiving $400 per month as a car allowance.

In Malphrus's March 22, 2001 evaluation, Norrell received an overall rating of between "good" and "average." In the thirteen separate categories, Malphrus gave Norrell an "outstanding" rating in dependability, six "good" ratings, four ratings between "good" and "average", and two "average" ratings. Malphrus increased her salary again in March of 2001 to $46,350 annually. At this time, Norrell was pregnant with her second child, due in August of 2001.

In July or August of 2001, Waste Away, through its North Alabama Division Manager Jeff Johnson ("Johnson") and its North Alabama Division Sales Manager Mike Mitchell ("Mitchell"), decided to combine the Montgomery and Opelika sales districts. Mitchell and Johnson gave notice of this change to both Greg Folmar ("Folmar"), Montgomery district sales manager, and Norrell and invited them to interview for the new combined district sales manager position. With the joining of the Montgomery and Opelika sales districts, Norrell's position and Folmar's position would be combined, leaving only one district sales manager over the combined district. Norrell contends that Johnson informed her that the decision on the promotion to district sales manager of the combined Montgomery and Opelika district would be made by Malphrus, Johnson, Mitchell, and John Carmichael ("Carmichael"), district manager for Montgomery.[4] Johnson and Mitchell in-

---

2. The Opelika district was part of the North Alabama Division of Waste Away. At the time of Norrell's employment, the North Alabama Division included ten districts: Tuscumbia, Vernon, Huntsville, Guntersville, Birmingham, Tuscaloosa, Demopolis, Montgomery, Alexander City, and Opelika.

3. The thirteen categories are: 1) job knowledge; 2) planning and organization; 3) quality; 4) accomplishments; 5) organizational effectiveness; 6) drive and initiative; 7) dependability; 8) human relations skills; 9)

leadership; 10) communication; 11) decision-making/foresight; 12) training and development; and 13) open-mindedness. In her March 2000 evaluation from Hill, Norrell received an "outstanding" rating in dependability, and a "good" rating in the remaining twelve categories.

4. Waste Away contends that the hiring decision would be made by Mitchell and Johnson alone, after they received some initial input from Malphrus. Mitchell states in his affidavit that once Malphrus provided both Mitch-

terviewed each of the three candidates—Norrell, Folmar, and White,[5] Opelika district operations manager—for approximately forty-five minutes to an hour each.[6] After completing the interviews, Johnson and Mitchell discussed the candidates and agreed to meet again to discuss the strengths and weaknesses of each candidate before making a final decision.

According to Norrell and based on her time working under White, White was, as both a supervisor and a sales manager, "[a]verage, I guess, or maybe a little bit below average ... I don't remember the numbers exactly, but I know that their sales force at that time [when White was her supervisor], they weren't making any money. They were losing money every month.... [A]s a sales manager ... I would have to say [his performance was] below average." Norrell Deposition, p. 103, lines 11–22. During his tenure as a sales manger, White failed to keep his sales representatives producing as expected, and his sales numbers were negative. Norrell Deposition, p. 116, lines 2–15. Norrell also asserts that when she took over from White as district sales manager for Opelika, the sales numbers for the district increased. Personally, Norrell had no problems with White, but she knew of instances where White allegedly injured Waste Away's reputation with several existing customers. Waste Away had employed White on three separate occasions, and he had left his employment with Waste Away twice.

At the time that Johnson and Mitchell conducted the interviews, White was employed with Waste Away as the Opelika district operations manager. During his previous employment with Waste Away, White had been employed as the district sales manager for the combined Opelika–Montgomery district. Waste Away had combined the districts during White's previous tenure with the company and later split the combined district into two districts which Norrell and Folmar oversaw. White had also served as a Lee County Commissioner.

Johnson and Mitchell reconvened to discuss each of the candidates they interviewed. According to Mitchell, Norrell

---

ell and Johnson with initial information about Norrell Malphrus was no longer involved in the decision of hiring for the position. According to Mitchell, the information that Malphrus provided about Norrell was that Norrell was likeable and a good worker. Malphrus also stated that "the sales results in Ms. Norrell's district were disappointing." Mitchell Affidavit, ¶ 6.

5. In her deposition, Norrell testified that Mitchell told her that the decision on the new manager of the combined district would be between Folmar and Norrell. At her interview, Norrell learned that Johnson and Mitchell also were considering White for the position.

6. Each interview included ten questions asked from a list. The ten questions are:
   1. What has been your most significant accomplishment as sales manager thus far?
   2. What has been your largest challenge as sales manager and why?
   3. What have you done to overcome this challenge?
   4. If you could start over as sales manager of this market what would you do different?
   5. What is your knowledge of the Montgomery market?
   6. What do you foresee as a major challenge of this market?
   7. How would you overcome this challenge?
   8. What would be your first action as sales manager over both markets?
   9. How long would it be before you made an impact in this position?
   10. Why should we hire you for this position?

was "very good at carrying out orders and accomplishing a list of tasks. However, she could not come up with the list of tasks that were needed to be done on her own. She required involved supervision." Mitchell Affidavit, ¶ 9. Mitchell also stated that Norrell had never held an outside sales position. While Norrell supervised outside sales representatives, she had not served as an outside representative. Additionally, while Norrell had knowledge of the Montgomery market from a customer service perspective, she "had limited knowledge of the Montgomery sales market." *Id.*

In her deposition, Norrell rated herself as the most qualified candidate over Folmar and White. Norrell Deposition, p. 189, lines 17–23, and p. 190, lines 1–2. At the time she left to go on maternity leave, Norrell's district was ranked second in the North Alabama Division in terms of sales numbers. Norrell also had experience in handling customer service issues from the Montgomery district and was thus familiar with Montgomery and some of Waste Away's Montgomery customers. As the Opelika district sales manager, she already had experience as a district sales manager and knew the Opelika market.

As for White's qualifications, Mitchell explained in his affidavit that White had knowledge of both the Montgomery and Opelika markets from a sales perspective. White previously had served in the very position, sales manager of the combined Montgomery and Opelika sales districts, that Mitchell and Johnson were attempting to fill. Mitchell viewed White as having "very good organizational and leadership skills" and as being able to work well with other departments. Mitchell Affidavit, ¶ 10. In his capacity as operations manager in Opelika, White had improved "the efficiency of the district's operations and improv[ed] the rates of missed pick-ups in the district." [7] *Id.* Carmichael, previously a manager over White, also endorsed White for the position. *Id.*

After reconvening to discuss the candidates, Johnson and Mitchell decided to promote White to district sales manager for the Opelika–Montgomery district. According to Mitchell, Johnson and he made the decision to promote White by themselves; Malphrus was not involved. Johnson and Mitchell decided to reinstate a position that Waste Away previously had eliminated and offer it to Norrell. The position, Temporary Construction Representative, "involved selling waste containers (such as dumpsters) to contractors at construction sites for use during construction. The term 'temporary' does not mean that the position was temporary. Rather, it refers to the fact that Waste Management's containers would be placed at the construction sites only temporarily." Mitchell Affidavit, ¶ 11. The salary for the position was to be $45,000 per year, approximately $1,350 less than Norrell made as a district sales manager.

Upon learning that she would not be promoted, Norrell contends that Waste Away asked her to train White for his new position. According to Norrell, the stress of losing the promotion and of being asked to train White began to take its toll, and her doctor advised her to begin her maternity leave immediately. Norrell began her maternity leave on August 8, 2001. She did not train White for his new position. Waste Away held the Temporary Construction Representative position open for Norrell for the duration of her maternity leave. After finishing her maternity leave in October of 2001, Norrell declined Waste

---

**7.** Mitchell had no knowledge of any customer service problems related to White's previous employment with Waste Away. Mitchell Affidavit, ¶ 10.

Away's offer for the Temporary Construction Representative position and left Waste Away's employ.[8] In her brief, Norrell contends that the offer of the Temporary Construction Representative position was "no offer at all." She received two weeks of severance pay.

### Discussion and Analysis

Norrell has asserted claims against Defendant for disparate treatment on the basis of sex for failing to promote her to the position of District Sales Manager for the combined Montgomery and Opelika district and for employment practices that caused a disparate impact on her because of her gender. The court will address each claim in turn.

1. *Disparate Treatment: Failure to Promote on the Basis of Gender, 42 U.S.C. § 2000e–2(a)*

■ Title VII, 42 U.S.C. § 2000e–2(a) provides:

It shall be an unlawful employment practice for an employer—

(1) to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's race, color, religion, sex, or national origin; or

(2) to limit, segregate, or classify his employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise affect his status as an employee, because of such individual's race, color, religion, sex, or national origin.

A claim of disparate treatment on the basis of sex brought under § 2000e–2(a) must be supported by either direct or circumstantial evidence. *See Rollins v. TechSouth, Inc.,* 833 F.2d 1525, 1528 (11th Cir. 1987). "Direct evidence is '[e]vidence, which if believed proves existence of a fact in issue without inference or presumption.'" *Id.* at 1529 n. 6 (quoting *Black's Law Dictionary* 413 (5th ed.1979) (citation omitted)). If a plaintiff produces direct evidence of sex discrimination, the burden of proof "effectively shifts" to the defendant, who must prove that no discrimination occurred. *Id.* at 1528. Evidence of direct discrimination is rare, and plaintiffs generally have to rely on circumstantial evidence to prove their claims of sex discrimination. *Id.*

Plaintiffs relying on circumstantial evidence to prove sex discrimination must rely on the burden-shifting analysis from *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973), and *Texas Department of Community Affairs v. Burdine,* 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981). *Cofield v. Goldkist, Inc.,* 267 F.3d 1264, 1267 (11th Cir.2001). Under the McDonnell Douglas–*Burdine* framework, a plaintiff must first establish a prima facie case of sex discrimination. *Burdine,* 450 U.S. at 252–53, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817; *see Adams v. Reed,* 567 F.2d 1283, 1286 n. 5 (5th Cir.1978) ("While *McDonnell Douglas* involved allegations of racial discrimination, the criteria outlined by the Supreme Court are equally applicable to sex discrimination, 'since, under Title VII, such discrimination is fungibly illegal with racial prejudice.'" (quoting *East v. Romine, Inc.,* 518 F.2d 332, 337 n. 4 (5th Cir.1975))).[9]

---

**8.** According to Mitchell, Waste Away currently has an individual working as a Temporary Construction Representative. Mitchell Affidavit, ¶ 11.

**9.** The Eleventh Circuit, in the en banc decision *Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981), adopted as prece-

■ In a failure to promote case, Plaintiff must establish the following elements for a prima facie case: 1) she belonged to a protected group; 2) she applied and was qualified for a job for which her employer was seeking applications; 3) despite her qualifications, she was rejected for the position; and 4) after she was rejected, her employer kept the position open or filled it with a person who is not a member of plaintiff's protected group. *See Walker v. Mortham,* 158 F.3d 1177, 1193 (11th Cir.

1998) (explaining that plaintiffs need not introduce evidence of the relative qualifications of persons promoted instead of plaintiffs as part of a prima facie case for failure to promote); *LeBlanc v. TJX Cos.,* 214 F.Supp.2d 1319, 1329 (S.D.Fla.2002) (stating elements of prima facie case for failure to promote); *Mays v. Union Camp Corp.,* 114 F.Supp.2d 1233, 1239 (M.D.Ala. 2000) (listing prima facie elements for failure to promote on the basis of race).[10]

dent decisions of the former Fifth Circuit rendered prior to October 1, 1981.

**10.** Waste Away vehemently argues that Norrell has failed to establish a prima facie case of discrimination in that she has failed to show that "other equally or less qualified employees who are not members of the protected minority were promoted." Defendant's Reply Brief, p. 3. Waste Away relies on *Lee v. GTE Fla., Inc.,* 226 F.3d 1249, 1253 (11th Cir. 2000), *Alexander v. Fulton County,* 207 F.3d 1303, 1339 (11th Cir.2000), and *Taylor v. Runyon,* 175 F.3d 861, 866 (11th Cir.1999), for the proposition that, as an element of a plaintiff's prima facie case of failure to promote on the basis of sex, a plaintiff must prove the relative qualifications of the employee actually promoted in the plaintiff's stead. In *Lee,* the Eleventh Circuit states that to establish a prima facie case of failure to promote on the basis of race, a plaintiff must show: 1) that she is a member of a protected minority; 2) that she was qualified and applied for the promotion; 3) that she was rejected despite these qualifications; and 4) other *equally or less qualified employees* who are not members of the protected minority were promoted. 226 F.3d at 1253 (citing *Taylor,* 175 F.3d at 866) (emphasis added).

*Lee,* a panel decision, decided in 2000, is in direct conflict with *Walker,* another panel decision, decided in 1998. In *Walker,* the court undertook an exhaustive analysis of the prima facie requirements for failure to promote claims. The court traced the history of the prima facie standard without the relative qualifications requirement to the former Fifth Circuit's decision in *Crawford v. W. Elec. Co.,* 614 F.2d 1300, 1315 (5th Cir.1980). *Walker,* 158 F.3d at 1186. Next, the *Walker* court noted that the standard requiring consideration of relative qualifications at the prima

facie analysis-the standard advocated by Waste Away-emerged only in the Eleventh Circuit's 1983 opinion in *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 n. 7 (11th Cir.1983). *Walker,* 158 F.3d at 1186–87. The *Walker* court also explained that the *Perryman* court only stated in dicta that relative qualifications should be considered as part of the plaintiff's prima facie case. *Id.* at 1186 n. 20.

With this intra-circuit conflict apparent, the *Walker* court applied the "earliest case" rule to determine which case to follow. *Id.* at 1188–89 (citing *Cargill v. Turpin,* 120 F.3d 1366, 1386 (11th Cir.1997); *United States v. Hogan,* 986 F.2d 1364, 1369 (11th Cir.1993)). The *Walker* court chose to follow the earlier *Crawford* decision and noted that it was "implicitly overruling the other [*Perryman*] line of cases." *Id.* at 1189. The court noted that its lack of respect for the prior panel decision in *Perryman* was "a necessary consequence of an intra-circuit split" but that the "earliest case" rule "is more respectful of the prior panel precedent rule than the alternative 'common sense and reason' rule, which essentially tells judges that once they find a division of authority they are free to throw precedent to the wind." *Id.*

The *Walker* court also found support for its reasoning in the Supreme Court's decisions in *Burdine* and *Patterson v. McLean Credit Union,* 491 U.S. 164, 109 S.Ct. 2363, 105 L.Ed.2d 132 (1989). According to the *Walker* court, *Burdine* "implicitly *affirmed*" the placement of the question of relative qualifications in the analysis of whether an employer's actions were a pretext for discrimination. *Walker,* 158 F.3d at 1190 (emphasis in original). "In other words, the Supreme Court implied [in *Burdine*] that it is the *employer* who initially presents evidence of relative

The task of proving a prima facie case is not a heavy or onerous burden; instead, a plaintiff need only satisfy a preponderance of the evidence standard. *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089.

"Once a prima facie case is established, a presumption of unlawful discrimination is established." *Combs v. Plantation Patterns,* 106 F.3d 1519, 1528 (11th Cir.1997) (citing *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). The burden then shifts to the defendant to "articulate some legitimate, nondiscriminatory reason for the employee's rejection." *Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (quoting *McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817). Should the defendant meet this burden, the plaintiff then has the "opportunity to discredit the defendant's proffered reasons for its decision." *Combs,* 106 F.3d at 1528. The plaintiff also has "an opportunity to prove by a preponderance of the evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *See Burdine,* 450 U.S. at 253, 101 S.Ct. 1089 (citing *McDonnell Douglas,* 411 U.S. at 804, 93 S.Ct. 1817). "[A] plaintiff's prima facie case, combined with sufficient evidence to find that the employer's asserted justification is false, may permit the trier of fact to conclude that the employer unlawfully discriminated." *Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 148, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000).

▪ Norrell is relying on circumstantial evidence to prove her case, and, applying the *Walker* prima facie standard, the court concludes that she has established a prima facie case of failure to promote on the basis of sex. Norrell, as a female, is a member of a protected class. She applied for a position that her employer was seeking to fill and was qualified for the position.[11] Waste Away rejected her ap-

---

qualifications, not the employee." *Walker,* 158 F.3d at 1190 (emphasis in original).

Looking to *Patterson,* the *Walker* court stated: "We may *never* require a plaintiff to establish that she is more qualified than the successful promotee, let alone impose that requirement at the prima facie stage. We believe that *Patterson* also prohibits us from requiring a plaintiff to prove equal qualifications at the prima facie stage." *Walker,* 158 F.3d at 1192 (emphasis in original). In *Patterson,* the Supreme Court stated:

> Under our well-established framework [*McDonnell Douglas*], the plaintiff has the initial burden of proving, by a preponderance of the evidence, a prima facie case of discrimination. The burden is not onerous. Here, petitioner need only prove by a preponderance of the evidence that she applied for and was qualified for an available position, that she was rejected, and that after she was rejected respondent either continued to seek applicants for the position, or, as is alleged here, filled the position with a white employee.

491 U.S. at 186–87, 109 S.Ct. 2363.

In *Mays,* this court followed *Walker* despite the contrary authority noted in Lee, *Taylor,* and *Alexander,* decisions which made no reference at all to *Walker* and its detailed analysis of the intra-circuit conflict. *See* 114 F.Supp.2d at 1239. The court in *Bernstein v. Sephora,* 182 F.Supp.2d 1214, 1220–21 (S.D.Fla.2002), also followed *Walker* and noted that it was "at a loss to explain the reason for the dissonance" between *Walker* and *Lee,* particularly since *Walker* predates *Lee* by almost two years. In the instant case, in the absence of help from the Circuit, this court will do its best to determine which of the conflicting Circuit decisions controls and, doing so, will continue to follow *Walker. See Mays,* 114 F.Supp.2d at 1239 ("[T]he court follows the holding of *Walker* and will not require [plaintiff] to demonstrate that [she] was as or more qualified than the persons who were promoted in order to establish a prima facie case.").

11. Norrell had experience as a district sales manager in the Opelika district, had a business degree, and had received positive reviews throughout her tenure with Waste Away. Additionally, Waste Away does not argue that Norrell was not qualified for the position of district sales manager for the com-

plication after an interview despite her qualifications. Finally, after rejecting Norrell, Waste Away filled the position with a person outside her protected class, i.e. White, a male. Under the *Walker* decision and this court's decision in *Mays*, Norrell has satisfied the first prong of the *McDonnell Douglas* burden shifting framework for a failure to promote on the basis of sex claim. *See Walker*, 158 F.3d at 1192–93; *Mays*, 114 F.Supp.2d at 1238–39.

■ To meet its burden under the second prong of the *McDonnell Douglas* framework, Waste Away must articulate a legitimate, non-discriminatory reason for its employment decision to promote White and reject Norrell. *See* 411 U.S. at 802, 93 S.Ct. 1817. Waste Away, through Mitchell's affidavit, states that White was offered the position because he was "the most qualified individual for the position." Mitchell Affidavit, ¶ 10. Specifically, Mitchell noted that White had previously worked as the district sales manager for the combined Opelika–Montgomery district, had experience in outside sales and in managing outside sales representatives, had a good reputation for organizational and leadership skills, had success in working with employees in other departments, and had experience as a Lee County Commissioner. *Id.* In contrast, Norrell lacked experience as an outside sales representative, could not formulate lists of tasks to be accomplished without supervision, and had limited knowledge of the Montgomery sales market. *Id.* at ¶ 9.

■ With Waste Away articulating a non-discriminatory reason for its decision to promote White instead of Norrell, the burden shifts back to Norrell to demonstrate that Waste Away's stated reason was a pretext for gender discrimination. *See Reeves*, 530 U.S. at 143, 120 S.Ct. 2097; *McDonnell Douglas*, 411 U.S. at 804, 93 S.Ct. 1817; *Lee*, 226 F.3d at 1253. A plaintiff may demonstrate pretext by undermining the credibility of a defendant's proffered explanations for the promotion decision. *See Combs*, 106 F.3d at 1538 (stating that pretext can be shown if a plaintiff introduces evidence demonstrating "such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its actions"). A plaintiff may also challenge an employer's decision that the plaintiff is less qualified than the person promoted. It must be noted, however, that the standard for addressing relative qualifications in the Eleventh Circuit requires a plaintiff to prove that he or she was "substantially more qualified than the person promoted" in order to establish pretext. *Lee*, 226 F.3d at 1253. In *Lee*, the court explained this requirement by saying that "disparities in qualifications are not enough in and of themselves to demonstrate discriminatory intent unless those disparities are so apparent as virtually to jump off the page and slap you in the face." *Id.* at 1254 (quoting *Deines v. Tex. Dept. of Protective & Regulatory Servs.*, 164 F.3d 277, 280 (5th Cir.1999)).[12]

bined Opelika–Montgomery district. *See Lane v. Ogden Entm't Inc.*, 13 F.Supp.2d 1261, 1276 (M.D.Ala.1998) (explaining that to satisfy elements of a prima facie case a plaintiff need only be *minimally* qualified for the position he or she seeks).

12. This high standard for establishing discrimination based on the relative qualifica-

tions of the competitors for a promotion serves the purpose of keeping the federal courts from second-guessing decisions made by employers in the course of their business. As the Eleventh Circuit explained in *Damon v. Fleming Supermarkets of Florida, Inc.*, 196 F.3d 1354, 1361 (11th Cir.1999), federal courts "are not in the business of adjudging whether employment decisions are prudent or

Norrell offers three pieces of evidence that allegedly demonstrate Waste Away's discriminatory animus: 1) she contends that Malphrus asked her to train White prior to White taking over as district sales manager for the combined Opelika–Montgomery district; 2) she argues that Malphrus made discriminatory statements about women in the workplace and later served as a decisionmaker in the promotion decision between her, Folmar, and White; and 3) she states that Johnson, a decisionmaker in the promotion decision, made a comment evidencing discriminatory animus against women. The court will address each issue in turn.

■ Norrell contends that Malphrus asked her to train White for his new position as district sales manager for the combined Opelika–Montgomery district. Through this contention, Norrell seeks to establish that she was more qualified than White for the district sales manager position. The court finds this argument unpersuasive. It is undisputed that White had previously worked as the district sales manager for the combined Opelika–Montgomery district. See Mitchell Affidavit, ¶ 7. Furthermore, it is also undisputed that despite Malphrus's alleged request that Norrell train White, she did not actually train White. See Norrell Deposition, p. 282, lines 10–15. With his prior experience in the very position he had just been promoted to, it is unclear why White would require any additional training or why Norrell, who by her own admission lacked sales manager experience in the Montgomery market, would be qualified to train White. See Norrell Deposition, p. 246, lines 17–20. The court finds that the alleged statement asking Plaintiff to train

White is not evidence of pretext on the part of Waste Away. See, e.g., Hanley v. Sports Authority, 143 F.Supp.2d 1351, 1369 (S.D.Fla.2000) ("Although Plaintiff may have had to train [a person promoted in Plaintiff's stead to Merchandise Team Lead] in one facet of his job, it is undisputed that [the person promoted] had more seniority at Sports Authority than Plaintiff and that [the person promoted] had been working in merchandising while Plaintiff was working in receiving.").

■ Norrell next argues that Malphrus made discriminatory statements regarding women in the workplace. The alleged statements include: 1) Malphrus asking if Norrell would return to work after the birth of her second child where Norrell understood that Malphrus was assuming that she would stay home with her child; 2) Malphrus asking Norrell during a discussion of employee bonuses if an employee who worked for her and was married to a county sheriff needed to work; and 3) Malphrus telling Norrell that he was surprised that she sought the district sales manager position for the combined Opelika–Montgomery district because the position involved a good deal of travel and Plaintiff would have two young children. See Norrell Deposition, p. 133, lines 3–5; p. 155, lines 18–20; p. 167, lines 20–23; p. 168, line 1. It is not readily apparent that these statements demonstrate a discriminatory animus by Malphrus. In regards to the first statement, Norrell admitted in her deposition that she and Malphrus "were having a personal conversation about the way [they] organized [their] respective households." Norrell Deposition, p. 139, lines 1–5. As for the second state-

---

fair. Instead our sole concern is whether unlawful discriminatory animus motivates a challenged employment decision." See Deines, 164 F.3d at 281 (explaining that "it is not the function of the jury to scrutinize the employer's judgment as to who is best qualified to fill the position. . . . The single issue for the trier of fact is whether the employer's selection of a particular applicant over the plaintiff was motivated by discrimination.").

ment, Malphrus, as Norrell's supervisor, may legitimately ask questions about employees working under her. Finally, the third statement could be fairly addressed to either a man or a woman who had very young children.

The court agrees with Waste Away that Malphrus's statements amount to stray remarks in the workplace. Malphrus did not make these alleged remarks as part of the decisionmaking process for the district sales manager promotion decision. Such remarks do not satisfy Norrell's burden to prove pretext. Norrell attempts to argue that Malphrus was a decisionmaker in the promotion decision between Folmar, White, and herself. Norrell, however, has failed to refute Waste Away's evidence that Malphrus was not a decisionmaker for the district sales manager promotion decision. See Mitchell Affidavit, ¶ 10 ("Mr. Malphrus was not involved in this decision.").[13] As the Eleventh Circuit recently noted, " 'statements by nondecisionmakers, or statements by decisionmakers unrelated to the decisional process' at issue will not satisfy the employee's burden." Steger v. Gen. Elec. Co., 318 F.3d 1066, 1079 (11th Cir.2003) (quoting Price Waterhouse v. Hopkins, 490 U.S. 228, 277, 109 S.Ct. 1775, 104 L.Ed.2d 268 (1989) (O'Connor, J., concurring)).[14]

Norrell's argument that Malphrus's statements may have influenced Johnson and Mitchell in their decision on the promotion is also unsuccessful. The court agrees with Waste Away that Stimpson v. City of Tuscaloosa, 186 F.3d 1328 (11th Cir.1999), controls her claim under this argument. To prevail under Stimpson, she must show that Mitchell and Johnson relied solely on Malphrus and his evaluation of her in making the promotion decision without undertaking an independent review of her and her qualifications. See id. at 1332. In fact, Johnson and Mitchell, without Malphrus present, interviewed Norrell for forty-five minutes to an hour. In his deposition, Mitchell stated that the only information that Malphrus provided about Norrell was that she "was very likeable and that she was a good worker" and that the sales results in Norrell's district "were disappointing." [15] Mitchell Affidavit, ¶ 6. Norrell has not introduced evidence that Mitchell and Johnson followed Malphrus's recommendation by simply rubber stamping Malphrus's views. In contrast, Mitchell and Johnson interviewed all three candidates and independently discussed the various strengths and weaknesses of each candidate. Norrell has failed to refute Mitchell's affidavit testimony of how the promotion decision was made, and the evidence before the court does not establish that Mitchell and Johnson adopted Malphrus's allegedly biased views about Norrell.[16] The court con-

13. Norrell's only evidence to support her contention is from her deposition testimony where she stated that Johnson *told* her that Malphrus would be involved in the decisionmaking process. Norrell Deposition, p. 189, lines 2–9. Assuming this statement to be *true*, it does *not* contradict Mitchell's statement in his affidavit that Malphrus was *not* actually involved in the decision.

14. Writing for the plurality in Price Waterhouse, Justice Brennan stated that "[r]emarks at work that are based on sex stereotypes do not inevitably prove that gender played a part in a particular employment decision. The plaintiff must show that the employer actually relied on her gender in making its decision." 490 U.S. at 251, 109 S.Ct. 1775.

15. In all fairness to Norrell, Mitchell also noted that sales results in the other districts also were dismal, including Folmar's Montgomery district. Mitchell Affidavit, ¶ 6.

16. Johnson told Norrell that after her interview that he had changed his opinion about her. If Johnson was going to follow Malphrus's allegedly biased views, there would be no need for him to even consider changing his opinion about Norrell.

cludes that this argument fails to establish a genuine issue of material fact.

■ The final statement allegedly demonstrating discriminatory animus is Johnson's statement about his wife becoming pregnant "later in life." While the language Johnson used was crude and a poor choice of words,[17] the court concludes that this statement does not establish pretext or a discriminatory animus. The alleged remark was not made in the course of the decision on the district sales manager promotion. Although Johnson was a decision-maker on the district sales manager position decision, his statement, even if read in conjunction with all of the other evidence in this case, is an "isolated [remark] . . . unrelated to the challenged employment decision." *See Rojas v. Florida,* 285 F.3d 1339, 1343 (11th Cir.2002). The *Rojas* court explained that such remarks "are not direct evidence of discrimination" and, if the remark is isolated and unrelated to the employment decision, "it, alone, is insufficient to establish a material fact on pretext." *Id.*[18]

After reviewing each of the alleged discriminatory statements made by Malphrus and Johnson, the court finds that they do not establish pretext. As the court noted above, the federal courts should not serve as "super-personnel department[s] that re-examine[ ] an entity's business decisions." *Chapman v. AI Transport,* 229 F.3d 1012, 1030 (11th Cir.2000) (quoting *Elrod v. Sears, Roebuck & Co.,* 939 F.2d 1466, 1470 (11th Cir.1991)). With this admonition in mind, the court, after taking due notice of the qualifications of both Norrell and White, cannot conclude that the alleged disparity between the respective qualifications of Norrell and White is "so apparent as virtually to jump off the page and slap you in the face." [19] *Lee,* 226 F.3d at 1254 (quoting *Deines,* 164 F.3d at 280). Instead, after an interview process and an independent analysis of Norrell's and White's strengths and weaknesses, Mitchell and Johnson chose White to be the district sales manager for the combined Opelika–Montgomery district. Mitchell and Johnson determined that White was more qualified than Norrell to fill that position. The court has determined that no genuine issue of material fact exists as to whether that decision was a pretext for gender discrimination. With that conclusion in hand, this court has no business

17. Johnson allegedly referred to his wife, who became pregnant "later in life," as being "knocked up."

18. The court notes that Norrell used the term "knocked up" in her deposition to describe her condition at the time Johnson allegedly made his statement. Norrell Deposition, p. 163, line 6.

19. In fact, the evidence reveals that White had previous experience in the *very* position that Mitchell and Johnson were seeking to fill. While Norrell had a variety of experience in different positions for Waste Away, she could not match White's experience in the position of district sales manager for the combined Opelika–Montgomery district. Norrell admitted in her deposition that White's experience as a district sales manager for the combined district would be more valuable than her experience with customer service in the Montgomery market. Norrell Deposition, p. 248, lines 5–22. These facts alone casts great doubt on her contention that she was more qualified than White for the position.

In *Chapman,* the Eleventh Circuit stated:
A plaintiff is not allowed to recast an employer's proffered nondiscriminatory reasons or substitute his business judgment for that of the employer. Provided that the proffered reason is one that might motivate a reasonable employer, an employee must meet that reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason. 229 F.3d at 1030. At best, Norrell's arguments over her qualifications as compared to White is simply her quarrel with Waste Away over the wisdom of its business decision.

disrupting Waste Away's business decision. Waste Away's Motion for Summary Judgment is due to be GRANTED for Plaintiff's claim for disparate treatment on the basis of sex.

*Disparate Impact Employment Practices: 42 U.S.C. § 2000e–2(k)(1)(A)*

Norrell acknowledged in her brief in opposition to summary judgment that she "does not contend, after discovery, that she has a claim for disparate impact discrimination." Plaintiff's Opposition to Defendant's Motion for Summary Judgment, p. 5. Accordingly, Waste Away's Motion for Summary Judgment is due to be GRANTED on this claim.

### Conclusion and Order

For the reasons stated above, the Defendant's Motion for Summary Judgment is due to be GRANTED as to both Plaintiff's disparate treatment and disparate impact claims, and it is hereby ORDERED as follows:

1. Defendant's Motion for Summary Judgment is GRANTED as to all of Plaintiff's claims.

2. Final Judgment will be entered in favor of the Defendant.

3. Costs are taxed against the Plaintiff.

### FINAL JUDGMENT

In accordance with the Memorandum Opinion and Order entered on this day granting the Defendant's Motion for Summary Judgment,

Judgment is hereby entered in favor of the Defendant, Waste Away Group, Inc., and against the Plaintiff, Paula Norrell.

Costs are taxed against the Plaintiff.