[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 07-15734
Non-Argument Calendar

_____

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
AUGUST 14, 2008
THOMAS K. KAHN
CLERK

D. C. Docket No. 06-00735-CV-T-N

CAMELLIA THERAPEUTIC FOSTER AGENCY, LLC,
represented by Joseph Appiah, Chairman
Therapeutic Foster Children, Foster
Parents and Staff,

Plaintiff-Appellant,

versus

BOB RILEY, Hon. Governor of Alabama in his
official capacity as the Chairman of the Alabama
State Department of Human Resources, et al.,

Defendants,

ALABAMA DEPARTMENT OF HUMAN RESOURCES,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Middle District of Alabama

_____

**(August 14, 2008)**

Before BIRCH, DUBINA and CARNES, Circuit Judges.

PER CURIAM:

This is Camellia Therapeutic Foster Agency, LLC's appeal from the district court's grant of summary judgment to the defendant, the Alabama Department of Human Resources, on Camellia's race discrimination claim filed under Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.

## I.

Camellia Therapeutic Foster Care Agency, LLC was a private foster care placement agency in Alabama owned and operated by Joseph Appiah, an African American male. Camellia was licensed by the Alabama Department of Human Resources and received annual contracts from the department to provide foster care services for the state in 2004 and 2005. As part of its business Camellia investigated potential foster parents, placed foster children in qualifying parents' care, and monitored the placements for compliance with state regulations. In February 2005 the department issued to private foster care agencies, including Camellia, a Request for Proposal inviting them to file responses seeking contracts to provide foster care services for the state in 2006. The request provided criteria that the private agencies had to meet in order to receive a contract to begin or

2

continue providing foster care services for the state.[1]

Twenty-two private agencies, including Camellia, submitted responses to the department. Each response was scored by five evaluators on a scale ranging from 0 to 1000, and the scores of the five evaluators were then averaged into one score. The private agencies that had an average score of 800 or above would be awarded a contract by the state. Those that scored under 800 would not.

Camellia's response received an average score of 753.3. Four of the five evaluators gave Camellia's response a score below 800, including Joyce Wilson, who gave it a score of 495. As a result of its average score, Camellia was denied a contract to provide foster care services for the state and had to shut down. Four other providers also fell below the 800-point threshold and were denied contracts.

Camellia sued the department, alleging that it had violated Title VI of the Civil Rights Act, 42 U.S.C. § 2000d.[2] The district court granted the department's motion for summary judgment on Camellia's Title VI claim and Camellia appeals, contending that the district court erred by: (1) concluding that the department

_____

[1] Agencies were not required to be licensed in order to submit a response and could be awarded contracts even if they had not yet been licensed by the department. However, in order to begin performing services under a department contract, an agency was required to file a license application with the department by June 7, 2005.

[2] Camellia's lawsuit against the department also included a procedural due process claim under the Fourteenth Amendment and state law claims for interference with an existing business and a contractual relationship. Camellia does not appeal the district court's judgment for the department on these claims, and therefore has abandoned any issue as to them.

3

sufficiently articulated a legitimate, nondiscriminatory reason for denying Camellia a contract; and (2) deciding that Camellia had not presented sufficient evidence to raise a genuine issue of material fact that the department's proffered nondiscriminatory reason was pretext for discrimination.

## II.

Title VI of the Civil Rights Act provides: "No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 42 U.S.C. § 2000d. For purposes of reviewing the district court's grant of summary judgment in favor of the department on Camellia's Title VI claim, we use the familiar McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817 (1973), burden shifting framework. See Ga. State Conference of Branches of NAACP v. Georgia, 775 F.2d 1403, 1417 (11th Cir. 1985) (citing McDonnell Douglas, 411 U.S. 792, 93 S. Ct. 1817) ("The elements of a [Title VI] disparate impact claim may be gleaned by reference to cases decided under Title VII."), abrogated on other grounds by Lee v. Etowah County Bd. of Educ., 963 F.2d 1416 (11th Cir. 1992).

Under that framework, when the plaintiff is faced with a motion for summary judgment, he bears the burden of establishing a prima facie case of

discrimination.  Springer v. Convergys Customer Mgmt. Group Inc., 509 F.3d 1344, 1347 (11th Cir. 2007).  "Once the plaintiff has made out the elements of the prima facie case, the burden shifts to the employer to articulate a non-discriminatory basis for its employment action."  Id.  "If the employer meets this burden, the plaintiff must show that the proffered reasons were pretextual."  Id. The district court assumed that Camellia had made out a prima facie case of discrimination, and we will do the same.

A.

Camellia first contends that the district court erred by concluding that the department met its burden to produce a legitimate, nondiscriminatory reason for denying Camellia a contract to provide foster care services for the state.  According to Camellia, the department's proffered nondiscriminatory reason for denying Camellia a contract—that its average score on the response was too low—was based on subjective criteria.  Camellia argues that the department has not articulated a clear and reasonably specific factual basis for the below-800 score on Camellia's response.

"Once the plaintiff has established a prima facie case, thereby raising an inference that he was the subject of intentional race discrimination, the burden shifts to the defendant to rebut this inference by presenting legitimate,

5

non-discriminatory reasons for its employment action." Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). "This intermediate burden is 'exceedingly light.'" Id. (citation omitted). "Subjective reasons can be just as valid as objective reasons . . . . A subjective reason is a legally sufficient, legitimate, nondiscriminatory reason if the defendant articulates a clear and reasonably specific factual basis upon which it based its subjective opinion." Chapman v. AI Transp., 229 F.3d 1012, 1034 (11th Cir. 2000) (en banc).

The department's proffered nondiscriminatory reason for denying Camellia a contract was that its average score, 753.3, was below the cutoff point of 800 points. The department's detailed scoring instrument used the following ten areas of evaluation, each of which contained multiple criteria: organization, start-up, referral, service delivery, target areas, discharge policy, prior experience, staff qualification, references, and compensation. Joyce Wilson, one of Camellia's evaluators who scored it below the 800 point threshold, testified that she gave Camellia the score that she did because: Camellia's response did not sufficiently address the training of foster parents; it did not sufficiently address the training of staff; the response did not describe the available services for birth parents; it did not account for training foster parents in therapeutic foster care; Camilla's program was not a statewide one; there was a discrepancy in the response regarding

6

employee background checks; and the response did not provide that the department would be contacted in the case of a critical incident with a foster child.

Contrary to Camellia's contention, these are objective criteria because they are "sufficiently susceptible of objective determination." Adams v. Reed, 567 F.2d 1283, 1287 & n.8 (5th Cir. 1978). Either a response describes available services for birth parents, or it does not. Either a response accounts for training foster parents in therapeutic care, or it does not. And so on. These are issues of fact, not opinion; a response's failure to meet these criteria is verifiable. The district court correctly concluded that the department carried its burden of producing a legitimate, nondiscriminatory reason for denying Camellia a contract.

## B.

Camellia next contends that, even if its failing score on the response were a legitimate, nondiscriminatory reason for denying it a contract, the district court erred by deciding that it had not raised a genuine issue of material fact that the department's proffered reason was actually a pretext for unlawful discrimination.

> To show that the employer's reasons were pretextual, the plaintiff must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable factfinder could find them unworthy of credence. If the plaintiff does not proffer sufficient evidence to create a genuine issue of material fact regarding whether each of the defendant employer's articulated reasons is pretextual, the employer is entitled to summary judgment on the plaintiff's claim.

7

Cooper v. Southern Co., 390 F.3d 695, 725 (11th Cir. 2004) (internal quotation marks and citations omitted).

Camellia first argues that the request for proposal process was a pretext for discrimination because the criteria the graders used were subjective. We have already addressed this argument. While Camellia may have disagreed with the relevant criteria or the evaluators' judgment about its response, that does not make the criteria subjective.

Second, Camellia argues that the request for proposal process could not have been the legitimate reason for denying it a contract because the department reserved the right to deny state approval if it is "in its best interest to do so." However, as Camellia acknowledges in its brief, the department did not exercise its discretionary authority to enter a "best interest" denial. All the foster care agencies whose scores were above 800 were awarded state contracts, and all the agencies whose scores were below 800 were not. The fact that the department left itself an escape clause for extreme circumstances, which was not used, does not create a genuine issue of material fact concerning pretext.

Third, Camellia argues that two other foster care agencies owned by non-minorities—National Mentor, Inc. and Children and Families First of Alabama—received higher scores on their responses even though they were less

8

qualified. These two other applicants were less qualified, Camellia says, because they had not worked in Alabama before, while Camellia had.

It does not follow, however, that just because National Mentor and Children and Families First had not worked in Alabama before that they were less qualified than Camellia. "Prior experience" was one of a number of factors to be considered by the department in selecting foster care agencies. Other factors included "service delivery" and "training requirements," and the evaluators determined that Camellia was deficient as to these two factors as well as some others. National Mentor and Children and Families First did not have these same problems with their responses. As the district court noted, Camellia has not "presented evidence from which a factfinder could assess and reasonably conclude that a white-owned private agency comparable in all relevant respects to Camellia was rated differently by Wilson." (emphasis in original).

Finally, Camellia argues that it presented direct evidence that the department had discriminated against it based on race before the request for proposal was issued. This indicates, according to Camellia, that the department's request was nothing but a pretext to deny Camellia a state contract. Camellia asserts that the following is direct evidence of discrimination against it: the department said that Camellia was "growing too fast;" the department believed that some of Camellia's

foster parents were not licensed by the state; the department removed some foster children from Camellia-approved foster parents; the department required Camellia to present proof that its foster parents had background checks; and the department subjected Camellia to "unfounded investigations and audits."

None of this is direct evidence of discrimination. Direct evidence is evidence which does not require an inferential leap from the statement or action by the department to the conclusion that the adverse decision was made with the intent to discriminate. See Carter v. Three Springs Residential Treatment, 132 F.3d 635, 642 (11th Cir. 1998). The department's statements and actions cited by Camellia do not directly indicate an intent to discriminate. Instead, most of them seem to indicate an intent by the department to insure that all the foster children in the state's care are placed with foster parents who have been licensed after undergoing the required background checks. They are not even circumstantial evidence of an intent to discriminate based on race.

Moreover, Camellia has not presented any evidence that other non-minority owned foster care agencies were treated differently—that they were not scrutinized as carefully by the department. In fact, all indications are to the contrary. Four non-minority owned foster care agencies—NBA CSC, Success Homes, Family Values, and Ability Plus—were denied contracts because, like Camellia, their

10

responses' average scores were below 800. Two of those agencies had been providing foster care services for the department at the time and, like Camellia, were forced to stop doing so. At the same time, the response of the only other minority-owned foster care agency to submit an application—Seeraj—was scored above 800 and granted a contract.

For these reasons, Camellia has not presented evidence establishing a genuine issue of material fact that the department's evaluation of its application was a pretext for discrimination. The district court correctly granted summary judgment for the department on Camellia's Title VI claim.

**AFFIRMED.**